**UNITED STATES of America,
Plaintiff-Appellee.**

v.

**Casey Lee PAUL, Defendant–Appellant.**

**No. 93–2212.**

United States Court of Appeals,
Eleventh Circuit.

June 22, 1994.

Lowell H. Becraft, Jr., Huntsville, AL, for appellant.

Robert W. Genzman, U.S. Atty., U.S. Attorney's Office, Ft. Myers, FL, Douglas Molloy, Tamra Phipps, Asst. U.S. Attys., Tampa, FL, for appellee.

Before ANDERSON and DUBINA, Circuit Judges, and ESCHBACH *, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge:

In November 1992, a jury convicted Casey Lee Paul of one count of structuring or attempting to structure certain currency transactions, in violation of 31 U.S.C. §§ 5322 and 5324(3), and two counts of willfully failing to file federal income tax returns for the years 1985 and 1986, in violation of 26 U.S.C. § 7203. Paul challenges his convictions on three grounds: venue, sufficiency of the jury instructions on the tax evasion counts, and accuracy of the jury instructions on the structuring count. Only Paul's claim of erroneous jury instructions on the structuring count merits our attention.[1] We affirm.

## I.

Casey Lee Paul is the sole proprietor of a plastering and drywall construction business in LeHigh, Florida, known as C.L. Paul Plastering. Although Paul's business netted positive income in both 1985 and 1986, Paul did not file federal income tax returns for either year. At trial, Paul testified that he had not filed a tax return since 1982 because he believed the payment of income taxes was voluntary.

In May 1987, the Internal Revenue Service ("IRS") issued a summons to obtain Paul's financial records for the years 1982 through 1986. Fearing the IRS would dispute his "understanding" of federal tax laws, Paul began liquidating his assets in an effort to conceal them from the IRS. Paul sold his partnership interest in a mini-storage business, taking $74,500 of the proceeds in the form of a cashier's check. On June 5, 1987, Paul and his wife, Deborah, went to the C & S National Bank in Ft. Myers and exchanged the $74,500 cashier's check for six cashier's checks, each in the amount of $9,800, one check for $1,700, and one check for $14,000. Over a period of days, Paul converted each of the $9,800 checks into cash or gold.

Unfortunately for Paul, a thief interrupted his liquidation efforts. On June 12, 1987, Paul called the Naples Police Department to report that his van, containing $85,000 in gold, silver and cash, had been stolen. When interviewed by a Naples police detective after recovery of the van (minus the gold and cash), Paul candidly discussed his financial activities. Paul told the detective that because the IRS was about to initiate a collection action against him, he was liquidating his assets. Paul also disclosed that he was cashing the cashier's checks on different days so he could avoid going over the $10,000 limit that requires a bank to file a currency transaction report ("CTR").[2]

From this point on, all did not go well for Paul. In March 1992, a grand jury indicted him on two counts of tax evasion and one count of currency structuring. A jury convicted him on all three counts in November 1992 and in February 1993, the district court sentenced him to 36 months' imprisonment on the structuring count, with all but six months of the sentence suspended. The court suspended Paul's sentence on the tax evasion counts and placed Paul on supervised probation for two and half years. Paul filed a timely appeal. This Court has jurisdiction under 28 U.S.C. § 1291.

## II.

Paul's challenge to his structuring conviction is a limited one. He claims that

---

* Honorable Jesse E. Eschbach, Senior U.S. Circuit Judge for the Seventh Circuit, sitting by designation.

1. Paul contends that the Middle District of Florida was an improper venue for trial of the tax evasion counts and faults the district court's tax evasion jury instructions for not including several tax code sections claimed to be integral to his

defense. These arguments lack merit and warrant no discussion.

2. Federal law requires banks and other financial institutions to file a CTR whenever a person's cash deposits or withdrawals exceed $10,000 in a single day.

the district court misunderstood the law of currency structuring as it existed in June 1987 and thus erroneously instructed the jury. Paul declares that he must be given a new trial because the district court refused to give his "single day theory" instruction: that the structuring of multiple cash withdrawals exceeding the sum of $10,000 must be performed *on a single day* in order to violate 31 U.S.C. § 5324(3). We do not agree. As we discuss below, Paul's requested jury instruction is an inaccurate statement of the law and the district court correctly refused to give the instruction.

Paul was charged with unlawful currency structuring under 31 U.S.C. §§ 5322 and 5324(3).[3] In June 1987, § 5324 provided that:

> No person shall for the purpose of evading the reporting requirements of section 5313(a) [of Title 31] with respect to such transaction— ...
>
> (3) structure or assist in structuring, or attempt to structure or assist in structuring, any transaction with one or more financial institution.

31 U.S.C. § 5324(3) (1986).[4] While § 5324 refers to the "reporting requirements of § 5313(a)," Treasury regulations establish the actual reporting requirements for banks and other financial institutions.[5] In 1987, as today, Treasury regulations require banks to report any cash transaction in excess of $10,000 and to aggregate all cash transactions made by a person "during any one business day," for purposes of determining whether the $10,000 threshold has been crossed. 31 C.F.R. § 103.22(a)(1).

According to Paul, in 1987, Treasury regulation § 103.22(a)(1) defined § 5324(3)'s pro- scribed transactions. In other words, § 5324(3) only disallowed structuring that occurred during the course of a single business day. Therefore, according to Paul, structuring that occurred over the course of more than one day was not prohibited in 1987. In support of his argument, Paul points to a later Treasury regulation defining "structuring." In part, the regulation states that a "transaction or transactions need not exceed the $10,000 reporting threshold at any single financial institution or *on any single day* in order to constitute structuring." 31 C.F.R. § 103.11(p) (1989). Paul contends that until this regulation took effect and expanded the scope of structuring liability, § 5324(3) did not prohibit a structuring scheme of multiple cash deposits or withdrawals of less than $10,000 over a series of days.

■ Paul's argument reflects a fundamental misunderstanding of § 5324(3). To the extent Paul suggests § 5324 does not criminalize behavior in the absence of Treasury regulations, Paul is absolutely wrong. The plain language of § 5324 and its legislative history make clear that § 5324 is a self-executing statute, requiring no regulatory implementation. *See* S.Rep. No. 433, 99th Cong., 2d Sess. at 21–21 (1986); and H.R.Rep. No. 746, 99th Cong., 2d Sess. at 18–19 (1986). More importantly, § 5324's prohibitions in no way depend on Treasury regulations defining a *bank's* reporting requirements. Quite simply, whether or not a bank is required to a file a CTR for a given transaction is wholly irrelevant to whether an individual engaged in unlawful currency structuring.

■ Section 5324 aims to prevent people from either causing a bank to fail to file a

---

3. Section 5322(a) subjects a willful violator of § 5324(3) to a fine of up to $250,000 and imprisonment of up to five years, or both.

At oral argument, both the government and defense counsel were questioned about the effect, if any, of the Supreme Court's decision in *Ratzlaf v. United States,* —— U.S. ——, 114 S.Ct. 655, 126 L.Ed.2d 615 (1994) on this appeal. Both sides agreed that the jury instructions given at Paul's trial comport with the dictates of *Ratzlaf.*

4. Section 5324 was enacted October 27, 1986, as section 1354(a) of the Anti-drug Abuse Act of 1986 (ADAA 1986), Pub.L. No. 99–570, Title I, 100 Stat. 3207–23 (1986). It took effect three

months later on January 27, 1987, section 1364(a) of the ADAA–86, 100 Stat. 3207–35. In 1992, minor changes were made to § 5324 by adding additional statutory references and designating subsections. There is no substantive difference between the current § 5324 and the § 5324 in effect in June 1987.

5. Section 5313(a) requires banks and the other covered financial institutions to comply with such reporting requirements for cash transactions as the Secretary of the Treasury shall establish.

required report or defeating the government's efforts to identify large cash transactions by splitting up a cash hoard in a manner that avoids triggering a bank's reporting requirements. *See United States v. Davenport,* 929 F.2d 1169, 1172–1173 (7th Cir.1991) (citations omitted), *cert. denied,* —— U.S. ——, 112 S.Ct. 871, 116 L.Ed.2d 776 (1992). In particular, § 5324(3) forbids the structuring of a cash transaction for the purpose of evading a bank's reporting obligations. Such a prohibition speaks directly to Paul's misconduct. Paul knew of the bank's reporting requirements and specifically knew that the bank would not report to the IRS a cash withdrawal in excess of $10,000 if the withdrawal took place in smaller units over a number of days. So Paul exchanged his large cashier's check ($74,500) for eight checks in smaller amounts and purposefully cashed those smaller checks over a series of days so that the banks would not aggregate the checks' amounts and report Paul to the IRS. Section 5324(3) was specifically designed to defeat such evasive tactics and Paul was rightly convicted thereunder.

### III.

For all of these reasons, we AFFIRM Paul's convictions on all counts.