**HICKSON CORPORATION (now known as Arch Wood Protection, Inc.), Plaintiff,**

**v.**

**NORTHERN CROSSARM CO., INC., and Patrick Bischel, in his individual capacity Defendants.**

**No. CIV.A.1:00CV1525WBH.**

United States District Court,
N.D. Georgia,
Atlanta Division.

Sept. 17, 2002.

William W. Maycock, Stephen Edmund O'Day, Andrew McFee Thompson, Smith Gambrell & Russell, Atlanta, GA, Robert L. Shufton, pro hac vice, David A. Kanter, pro hac vice, Wildman Harrold Allen & Dixon, Chicago, IL, for plaintiff.

Warner R. Wilson, Jr., Wilson & Epstein, Atlanta, GA, for Northern Crossarm Co., Inc., defendant.

Warner R. Wilson Jr., pro hac vice, Wilson & Epstein, Atlanta, GA, David S. McCrea, pro hac vice, McCrea & McCrea, Bloomington, IN, for Patrick Bischel, defendant.

## *ORDER*

HUNT, District Judge.

This civil action is before the Court on Defendants' Motion for Summary Judgment [27], Defendants' Motion to Modify or Dissolve Injunction [29], Plaintiff's Motion for Summary Judgment Against Defendants' Counterclaim [30], and Plaintiff's Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt [31]. For the reasons stated below,

Defendants' Motion for Summary Judgment [27] is GRANTED, Defendants' Motion to Modify or Dissolve Injunction [29] is DENIED AS MOOT, Plaintiff's Motion for Summary Judgment Against Defendants' Counterclaim [30] is GRANTED, and Plaintiff's Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt [31] is DENIED.

## I. BACKGROUND

Plaintiff Hickson Corporation, a sixty year old company, formulates, markets, licenses and sells a wood preservative product used to make pressure treated lumber. Specifically, Hickson sells a brand of chromated copper arsenate ("CCA"), which, when applied to wood, makes it resistant to insect damage, rot and decay. Once wood is treated with Hickson's product, it is then sold and known as "Wolmanized" pressure treated wood.

Defendant Northern produces pressure treated wood, but it purchases a wood preservative from a competitor of Plaintiff. Defendant treats its wood with a preservative known as "ACQ,"which is different in chemical formulation from CCA treated wood. Defendant Bischel is the President of Defendant Northern, and he has the responsibility of marketing Defendant Northern's pressure treated wood product, which sells under the name "ACQ–Preserve."

On May 21, 2000, Defendants created and sent via fax an advertisement to approximately 480 retailers and distributors of CCA pressure-treated wood, which stated the following message:

### OUCH!

During the last 5 weeks, 5 major metropolitan news programs have done news segments warning the public about the dangers of CCA treated wood.

In court depositions in 1998, Hickson representatives admitted to knowing of at least a dozen instances of purported personal injuries caused by exposure to Wolmanized Pressure Treated Wood.

Is it time for you to switch to a treated wood without arsenic? Call us for more information on ACQ Preserve.

Plaintiff demanded that Defendants retract the advertisement, or that they provide Plaintiff with factual support for the content of the advertisement. Defendants refused both to retract the advertisement and to provide Plaintiff with any supporting factual information. Therefore, on June 16, 2000, Plaintiff filed this lawsuit against Defendants alleging: (1) false and misleading representations in violation of Section 43(a)(1)(B) of the Lanham Act, 15 U.S.C § 1125(a)(1)(B); (2) violations of the Georgia Deceptive Trade Practices Act, O.C.G.A. § 10–1–372(a)(5), (a)(7), (a)(8), and (a)(12); (3) libel pursuant to O.C.G.A. § 51–5–1; (4) common law product disparagement and unfair competition; and (5) tortious interference with contractual and business relations. In conjunction with filing the complaint, Plaintiff also moved the Court for a Temporary Restraining Order [1]. The Parties ultimately consented to and submitted a proposed Preliminary Injunction to the Court, which it signed on July 7, 2000[6].

On July 20, 2000, Hickson communicated the following statement to its customers:

You may have heard that someone has been saying untrue things about Wolmanized wood. Hickson has regarded those accusations as the serious attacks that they were intended to be. As a consequence, Hickson filed a lawsuit against Northern Crossarm Co., Inc., and Patrick Bischel.

The nature of the lawsuit is described in the attached preliminary injunction, which has been entered by the federal court against the Defendants.

As you will see from reading pages 3 and 4 of the enclosure, Northern Cross-

arm and Mr. Bischel are enjoined from making false, misleading and/or disparaging statements regarding Hickson, Wolmanized goods and services, or CCA-treated wood; and from engaging in any communication that misleads or misinforms consumers or constitutes any deceptive misrepresentation.

In the event that you witness or hear of any act by Northern Crossarm or Mr. Bischel that may constitute a violation of the Preliminary Injunction, please contact Bill Baldwin at the Hickson office shown on this letterhead. Please address any questions that you may have regarding this matter to me, and I will try to obtain a response for you promptly.

Sincerely,

Steve Snyder

In response to this letter, Defendants filed a counterclaim against Plaintiff for libel and tortious interference with contractual and business relations.

## II. DISCUSSION

### A. *Summary Judgment Standard*

Federal Rule of Civil Procedure 56 provides that summary judgment is appropriate when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). A fact is material if, under applicable substantive law, it might affect the outcome of the case. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *Tipton v. Bergrohr GMBH–Siegen*, 965 F.2d 994, 998 (11th Cir.1992), *cert. denied*, 507 U.S. 911, 113 S.Ct. 1259, 122 L.Ed.2d 657 (1993). "It is genuine if the record taken as a whole could lead a rational trier of fact to find for the non-

moving party." *Tipton*, 965 F.2d at 998 (internal quotation marks omitted). Thus, the court's focus in ruling on a motion for summary judgment is "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.* at 251, 106 S.Ct. 2505, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202; *see also Allen v. Tyson Foods, Inc.*, 121 F.3d 642, 646 (11th Cir. 1997).

Where the nonmoving party bears the burden of proof at trial, the moving party must demonstrate to the court that "there is an absence of evidence to support the nonmoving party's case," *Celotex Corp. v. Catrett*, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986), or must put forth affirmative evidence negating an element of the nonmoving party's case, *Fitzpatrick v. Atlanta*, 2 F.3d 1112, 1116 (11th Cir. 1993). It is then the responsibility of the nonmoving party, by revealing evidence outside of the pleadings, to show that evidence supporting its case does exist or that the element sought to be negated remains a genuine issue of material fact to be tried. *Id.* Essentially, this requires the nonmoving party to come forward with evidence sufficient to withstand a directed verdict on this issue at trial. *Id.* at 1116–17.

The nonmoving party is not required to carry its burden of proof at the summary judgment stage. In analyzing the motion, the Court views the facts in the light most favorable to the nonmoving party and makes all factual inferences in favor of that party. *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 918 (11th Cir. 1993); *Rollins v. TechSouth, Inc.*, 833 F.2d 1525, 1529 (11th Cir.1987). "The court must avoid weighing conflicting evidence or making credibility determinations." *Hairston*, at 919. "Where a reasonable fact finder may 'draw more than one infer-

ence from the facts, and that inference creates a genuine issue of material fact, then the court should refuse to grant summary judgment.'" *Id.* (quoting *Barfield v. Brierton,* 883 F.2d 923, 933–34 (11th Cir. 1989)).

### B. Defendants' Motion for Summary Judgment

Defendants' move the Court for summary judgment on all counts. Defendants argue that the undisputed facts before the Court demonstrate that the statements contained in the May 21, 2000 advertisement are not false or misleading as Plaintiff contends, which therefore entitles them to summary judgment on all of Plaintiff's claims.

### (1) Lanham Act Claim

The Lanham Act prohibits false advertising in order to "protect the rights of consumers to receive only truthful commercial information and the rights of competitors to compete in a market free from untruthful information." *Tire Kingdom, Inc. v. Morgan Tire & Auto. Inc.,* 915 F.Supp. 360, 364 (S.D.Fla.1996). To succeed on a false advertising claim under the Lanham Act, a plaintiff must prove: (1) that the defendant made a false statement of fact in an advertisement about its product or the product of a competitor; (2) that the false statement deceived, or had the tendency to deceive, a substantial segment of the targeted audience; (3) that the deception is material, meaning that it is likely to influence a purchaser's decision; (4) that the false statement entered interstate commerce through the action of the defendant; and (5) that the plaintiff has been, or is likely to be, injured as a result of the false statement, either by a direct loss of sales or loss of goodwill. *Johnson & Johnson Vision Care, Inc. v. 1–800 Contacts, Inc.,* 299 F.3d 1242 (11th Cir.2002); *United Industries Corp. v. Clorox Co.,* 140 F.3d 1175, 1180 (8th Cir.1998); *BellSouth Advertising & Publishing Corp. v. Lambert Publishing,* 45 F.Supp.2d 1316, 1320 (S.D.Ala.1999); *Tire Kingdom,* 915 F.Supp. at 364.

"The false statement necessary to establish a Lanham Act violation generally falls into one of two categories: (1) commercial claims that are literally false as a factual matter; and (2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." *United Industries,* 140 F.3d at 1180. Plaintiff alleges that the advertisement distributed by Defendants on May 21, 2000 is both literally false and misleading.

As to literal falsity, the parties agree that the first paragraph of the advertisement, referencing five news programs, is literally true and, therefore, not a basis of Plaintiff's complaint. With respect to the second paragraph of the advertisement, the undisputed facts before the Court establish that in 1998, counsel for Plaintiff submitted interrogatory responses in the case of *Walker v. Hickson (USA) Corp., et al.,* 1:97–CV–132 in the United States District Court for the Northern District of Utah which stated that, "this defendant [Hickson] is aware of the following personal injuries purportedly caused by exposure to Wolmanized Pressure Treated Wood ...." The interrogatory response then listed the names and case numbers of twelve civil actions.[1]

---

1. One year later, in 1999, counsel for Hickson supplemented this response in order to add three additional civil actions to the list of twelve previously submitted. Then, in October of 2000, counsel for Hickson once again amended this response. In this final amendment, Hickson stated that it is aware of only one case alleging personal injuries caused by exposure to Wolmanized Pressure Treated Wood, two cases alleging personal injuries caused by splinters from Wolmanized Pres-

Plaintiff argues that the second paragraph of the advertisement is false because Plaintiff is actually aware of only one instance of purported personal injury from exposure to Wolmanized Pressure Treated Wood. Plaintiff then refers the Court to its amendment to the interrogatory response in the *Walker* case, filed in October of 2000. However, the undisputed facts before the Court establish that in May of 2000, when Defendants published the advertisement at issue, Plaintiff stated in a court document that it was aware of twelve instances of personal injuries purportedly caused by exposure to Wolmanized Pressure Treated Wood, and nineteen (19) cases alleging personal injuries caused by exposure to CCA or CCA pressure treated wood. *See* Hickson's Response to Defendant's Motion for Summary Judgment, Exhibit L[35].

2. Plaintiff argues that the advertisement is literally false under the Lanham Act because it used the word deposition rather than interrogatory. The Court finds this to be a distinction without a difference. The fact that the statement was made in an interrogatory response rather than a deposition does not change the substance of the message, or the fact that the statement was made by Plaintiff in 1998. Finally, Plaintiff attempts to make an issue out of the fact that the interrogatory responses were unsworn. However, the advertisement does not say anything about Plaintiff providing sworn statements.

3. Plaintiff contends that Defendants, after becoming aware that Plaintiff corrected the interrogatory response in October of 2000, nevertheless continued to disseminate the advertisement in violation of the Lanham Act and the consent preliminary injunction in this case.
Defendant Bischel provided a copy of the advertisement to a reporter in Florida who then republished the advertisement in an article. However, Mr. Bischel's uncontroverted deposition testimony establishes that he spoke with a reporter writing a story about the ongoing controversy around CCA pressure treated wood and this litigation, in particular. Specifically, the reporter focused on the statement by William Baldwin, the Vice–President of Operations and Industry Relations for Plaintiff, which was submitted to the Court

sure Treated Wood.[2] Therefore, the second paragraph of the advertisement is not literally false.[3]

Finally, with respect to the third paragraph, Plaintiff initially contended in this lawsuit that Wolmanized Pressure Treated Wood does not contain arsenic. *See* Plaintiff's Complaint ¶ 18(e) [1]. Presently, Plaintiff contends that its product does not contain "arsenic as understood by lay persons, i.e., the white powdery poison." *See* Hickson's Response to Defendant's Motion for Summary Judgment at 22[35]. However, the undisputed facts before the Court along with the Complaint, that "Wolmanized pressure treated wood does not contain arsenic." In response to her questions about the litigation Defendants provided her with a copy of the May 21, 2000 advertisement along with other court documents.

Defendants have not, as far as the Court is aware, continued to publish the advertisement to potential or actual consumers since the inception of this litigation. Defendants have responded to inquiries from various media sources concerning this litigation, and, at times, provided the media with copies of documents at issue in the litigation, including the May 21, 2000 advertisement, the complaint, and the preliminary injunction. The Court finds that providing a copy of the advertisement, or other court documents, to a reporter in response to an interview about the ongoing litigation does not amount to an intentional publication of the advertisement in violation of the Lanham Act or the preliminary injunction in place in this litigation. A copy of the advertisement, or any other document in this case, could just as easily have been obtained directly from the Court, as nothing in the record is under seal and is a matter of public record.

That being said, as Defendants are presently aware of the October 2000 amendment to the interrogatory responses in the *Walker* case, an intentional publication of the advertisement to the consuming public at the conclusion of this litigation without modifying the information to reflect Plaintiff's corrected statement could give rise to a claim for misleading advertising.

demonstrate that Wolmanized Pressure Treated Wood contains pentavalent arsenic, which is also referred to as arsenic (V). The warning label attached to Wolmanized Pressure Treated Wood states that, "Arsenic is in the pesticide applied to this wood." Plaintiff's Material Safety Data Sheet about Wolmanized Treated Wood and Lumber states, in Section IV–Note to Physician, "If one ounce of treated wood dust per 10lbs. of body weight is ingested, acute arsenic intoxication is a possibility." *See* Defendant's Motion for Summary Judgment, Exhibit C[27]. Therefore, after construing the facts in a light most favorable to Plaintiff, there is no doubt that Wolmanized Pressure Treated Wood contains arsenic, and Plaintiff has failed to establish that Defendants' statement of this fact is literally false.

In sum, then, the uncontroverted evidence before the Court demonstrates that Defendants' May 21, 2000 advertisement is not literally false under the Lanham Act. Plaintiff, however, contends that the advertisement also violates the Act because it is misleading.

■■■ As previously explained, "[e]ven if an advertisement is not literally false, relief is available under the Lanham Act § 43(a) if it can be shown that the advertisement has misled, confused, or deceived the consuming public." *Southland Sod Farms v. Stover Seed Co.,* 108 F.3d 1134, 1139 (9th Cir.1997). The Eighth Circuit explains that, "[w]here a commercial claim is not literally false but is misleading in context, proof that the advertising actually conveyed the implied message and thereby deceived a significant portion of the recipients becomes critical." *United Industries,* 140 F.3d at 1182. Plaintiff contends that the May 21, 2000 advertisement actually deceived consumers of Wolmanized Pres-

sure Treated Wood. Accordingly, "unless a commercial claim is literally false, or a trier of fact has determined that a competitor acted willfully with intent to deceive or in bad faith, a party seeking relief under [the Lanham Act for a true but misleading advertisement] bears the ultimate burden of proving actual deception by using reliable consumer or market research." *Id.* at 1183;[4] *see also, BellSouth,* 45 F.Supp.2d at 1321 ("absent a showing of absolute falsity, it is absolutely essential for the Plaintiff to .show actual deception using reliable consumer or market research.").

In support of its claim that the advertisement is misleading and actually deceived its consumers, Plaintiff submits the affidavit of one of its sales representatives, who states that:

> After May 21, 2000, I received numerous telephone calls from wood treaters licensed by Hickson ("Hickson Customers") to [sic] manufacture and sell Wolmanized pressure treated wood.... In these telephone calls, Hickson Customers told me that they received copies of the May 21, 2000 advertisement from Bischel and Northern Crossarm and described to me the contents of that advertisement. They also expressed concerns and confusion regarding that May 21, 2000 advertisement and asked questions regarding the safety of Hickson's Wolmanized products.

Hickson's Response to Defendants' Motion for Summary Judgment, Exhibit E, p. 2 [35].

■■■ Other than this anecdotal account from a sales representative, Plaintiff offers no reliable consumer or market research demonstrating consumer deception, or even a tendency for deception. While "full blown consumer surveys or market re-

---

4. The *United Industries* Court concluded that if a trier of fact determines that a defendant violated the Lanham Act willfully and in bad faith, then evidence of consumer impact through surveys or reaction tests is not necessary to prove entitlement to damages. *Id.*

search are not an absolute prerequisite [at the preliminary injunction stage], and expert testimony or other evidence may at times be sufficient to obtain preliminary injunctive relief," *United Industries,* 140 F.3d at 1183, the burden at the summary judgment stage is higher and requires more than anecdotal testimony. *See also, Johnson & Johnson,* 299 F.3d 1242 (recognizing that consumer surveys or market research is not an absolute prerequisite at the preliminary injunction stage of the litigation). Consequently, as the case is at the summary judgment stage, Plaintiff's failure to provide any reliable consumer or market research in support of its claim that the advertisement is misleading is fatal to its claim.

 Additionally, the Court finds that the evidence before the Court would not permit a reasonable jury to conclude that the Defendants published the advertisement in bad faith or with the intent to deceive the consuming public. Plaintiff argues that Defendant Bischel's deposition testimony establishes an intent to harm Plaintiff by deceiving the public. The Court disagrees. Bischel repeatedly testified that, "[m]y intent was to print word-for word what I had read in the documents that Mr. McCrea had given me." Bischel Dep., p. 116, Hickson's Response to Defendant's Motion for Summary Judgment, Exhibit B[35].[5] Bischel's deposition testimony actually supports his position that he intended to pass along truthful information. He did not make any broad implications or generalizations beyond the truthful statement, which could reasonably be construed by a trier of fact as evidence of an intent

to deceive or bad faith. Plaintiff provides no other support for its position that the Defendants acted in bad faith, or with the intent to deceive, and the above referenced statements simply do not support Plaintiff's position. Therefore, the Court GRANTS Defendants' Motion for Summary Judgment on Plaintiff's Lanham Act claim.

### (2) State Law Claims [6]

In response to Defendants' Motion for Summary Judgment on Plaintiff's state law claims, Plaintiff relies on the same arguments it submitted with respect to the Lanham Act claims. Defendants also set forth the same arguments presented with respect to the Lanham Act claims to support their motion for summary judgment on the related state law claims. Therefore, the parties appear to agree, for purposes of this motion, that the Court's analysis and conclusion with respect to the Lanham Act claim is equally applicable to the state law claims. Accordingly, for the reasons stated above, the Court also GRANTS Defendants' Motion for Summary Judgment on Plaintiff's state law claims.

### C. Plaintiff's Motion for Summary Judgment on Defendants' Counterclaims

 In response to Plaintiff's letter to its customers dated July 20, 2000, which concerned particular aspects of this lawsuit, Defendants filed a counterclaim against Plaintiff for libel and tortious interference with contractual and business relations, alleging that Plaintiff published

---

**5.** In response to different questions about his intent in publishing this advertisement, Bischel responded with, "My intent was basically to pass along the information that I had pulled out of the document," *Id.* at 117, and "My intention, again, was to pass along the information that was presented in the documents that I had." *Id.*

**6.** Plaintiff asserted state law claims for: (1) violations of the Georgia Deceptive Trade Practices Act; (2)Libel; (3)common law product disparagement and unfair competition; (4)tortious interference with contractual and business relations, which are all based on the same allegation that the advertisement is false and misleading.

the letter with the intent to injure Defendants. Defendants claims are based on the first paragraph of the July 20, 2000 letter.[7]

Plaintiff argues it is entitled to summary judgment on both of these claims because: (1) the July 20, 2000 letter is true because Defendants made false statements about Wolmanized wood; (2) the July 20, 2000 letter is a privileged communication; (3) Defendants have failed to provide any evidence of damages related to the first paragraph of the July 20, 2000 letter; and (4) no evidence exists that Plaintiff intended to interfere with Defendants' business.

 Under Georgia law, "[a] libel is a false and malicious defamation of another, expressed in print, writing, pictures, or signs, tending to injure the reputation of the person and exposing him to public hatred, contempt, or ridicule." O.C.G.A. § 51–5–1(a). However, "[s]tatements made with a good faith intent on the part of the speaker to protect his or her interest in a matter in which it is concerned," O.C.G.A. § 51–5–7(3), are privileged. Therefore, "[a] defendant relying on privilege as a defense to a libel action must show good faith, an interest to be upheld, a statement properly limited in scope, a proper occasion and publication to proper persons". *Davis v. Sherwin–Williams Co.,* 242 Ga.App. 907, 908, 531 S.E.2d 764, 765 (2000). Once privilege is established, it can only be overcome with proof that the defendant acted with actual malice. *Id.* at 909, 531 S.E.2d at 766 (granting defendant's motion for summary judgment because the record lacked evidence of actual malice).

As evidence that the communication is privileged, Stephen Snyder, the Director of Sales and Services at Hickson and the author of the letter, submitted an affidavit in which he submits to the Court that: (1)

he sent the letter in the normal course of business only to Hickson customers who are wood treatment companies that purchase CCA treated wood from Hickson; (2) he sent the letter in the normal course of business in order to protect Hickson's interest in its business, which it perceived to be attacked by Defendants' May 21, 2000 advertisement; and (3) he limited the scope of the letter to cover only subject matter concerning Defendants' actions and Hickson's response thereto. The Court finds that this evidence supports Plaintiff's position that the letter was sent in good faith, in an attempt to support a legitimate business interest, was properly limited in scope, and was sent to appropriate persons on a proper occasion. *Davis,* 242 Ga.App. at 908, 531 S.E.2d at 765. Finally, while the question of actual malice is normally one for the jury, the Court concludes, for the reasons previously stated concerning bad faith and intent to deceive, that the record in this case simply fails to provide a genuine issue of material fact that Hickson acted with intentional malice. *Id.* at 909, 531 S.E.2d at 766. Therefore, Hickson's motion for summary judgment on Defendants' counterclaim for libel is GRANTED on the basis that the communication is privileged.

 Next, the elements of a claim for tortious interference with business or contractual relations are that the defendant: "(1) acted improperly and without privilege, (2) purposely and with malice with the intent to injure, (3) induced a third party or parties not to continue a business relationship with the plaintiff, and (4) for which the plaintiff suffered some financial injury." *Kitfield v. Henderson, Black & Greene,* 231 Ga.App. 130, 133, 498 S.E.2d 537, 541 (1998). As the Court previously concluded that the letter at issue is privileged, it necessarily follows, then, that

7. A complete copy of this letter is included in the background portion of this Order.

Defendants are unable to establish the first element of a counterclaim for tortious interference with contractual relations. Accordingly, Plaintiff's motion for summary judgment on this claim is also GRANTED.

## III. CONCLUSION

For the reasons stated above, Defendants' Motion for Summary Judgment [27] is GRANTED, Defendants' Motion to Modify or Dissolve Injunction [29] is DENIED AS MOOT, Plaintiff's Motion for Summary Judgment Against Defendants' Counterclaim [30] is GRANTED, and Plaintiff's Motion for an Order to Show Cause Why Defendants Should Not Be Held in Contempt [31] is DENIED. Furthermore, the parties will bear their own costs of this litigation. The Clerk is DIRECTED to terminate all pending submissions and to CLOSE this case.

### *JUDGMENT*

This action having come before the court, Honorable Willis B. Hunt, Jr., United States District Judge, for consideration of defendants' motion for summary judgment and plaintiff's motion for summary judgment on defendants' counterclaim, and the court having granted said motions, it is

**Ordered and Adjudged** that the action be **DISMISSED** and all parties will bear their own costs of this litigation.