[PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED

U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
January 26, 2004
THOMAS K. KAHN
CLERK

_____

No. 02-15899
_____

D. C. Docket No. 00-01525-CV-WBH-1

HICKSON CORPORATION,

> Plaintiff-
> Counter-Defendant-
> Appellee
> Cross-Appellant,

versus

NORTHERN CROSSARM CO., INC.,
PATRICK BISCHEL, in his individual
capacity,

> Defendants-
> Counter-Claimants-
> Appellants
> Cross-Appellees.

_____

Appeal from the United States District Court for the
Northern District of Georgia

_____

**(January 26, 2004)**

Before TJOFLAT, BIRCH  and GOODWIN[*], Circuit Judges.

GOODWIN, Circuit Judge:

A controversy over promotional language employed by competitors in the wood-preservation products industry resulted in litigation in which parties on both sides obtained a summary judgment.  Both sides have appealed.   Because material evidence was overlooked in the district court, one of the summary judgments must be vacated and remanded.  We affirm the other summary judgment.

## BACKGROUND

Plaintiff-Appellee Hickson Corporation ("Hickson")[1] formulates, produces, and markets chromated copper arsenate ("CCA") to wood treatment companies. Hickson owns the "Wolmanized®" trademark, and wood products companies that use Hickson's CCA product are licensed to sell wood as "Wolmanized®" lumber to retailers.  Defendant-Appellant Northern Crossarm Company ("Northern") purchases a different wood preservative, alkaline copper quaternary ("ACQ"), from a Hickson competitor, pressure treats wood with it, and markets the resulting product to retailers under the name "ACQ-Preserve."  Defendant Patrick Bischel is

---

[*]Honorable Alfred T. Goodwin, United States Circuit Judge for the Ninth Circuit, sitting by designation.

[1]Hickson is now known as Arch Wood Protection, Inc.

the President of Northern and is responsible for marketing ACQ-Preserve. ACQ-Preserve competes directly with Wolmanized lumber in the relevant market. These facts are not in substantial dispute.

On May 21, 2000, Bischel sent a facsimile advertisement for Northern's ACQ-Preserve to 480 retailers and distributors of CCA pressure-treated wood. Some of these 480 retailers and distributors were purchasers and sellers of Wolmanized® lumber. The advertisement (hereinafter "OUCH! advertisement") read as follows:

> OUCH!
> During the last 5 weeks, 5 major metropolitan news programs have done news segments warning the public about the dangers of CCA treated wood.
> In court depositions in 1998, Hickson representatives admitted to knowing of at least a dozen instances of purported personal injuries caused by exposure to Wolmanized Pressure Treated Wood.
> Is it time for you to switch to a treated wood without arsenic? Call us for more information on ACQ Preserve.

Hickson demanded that Northern provide Hickson with factual support for the OUCH! advertisement and that it retract the advertisement. Northern refused to do either, and Hickson filed suit on June 16, 2000.

Hickson alleged five claims: (1) false and misleading representations in violation of the Lanham Act, 15 U.S.C. § 1125(a)(1)(B); (2) violations of the Georgia Deceptive Trade Practices Act (GDTPA), O.C.G.A. § 10-1-372(a)(5),

3

(a)(7), (a)(8), and (a)(12); (3) libel in violation of O.C.G.A. § 51-5-1; (4) common law product disparagement and unfair competition; and (5) tortious interference with contractual and business relations.

The district court entered a consent preliminary injunction on July 7, 2000, enjoining Northern from making false, misleading, and/or disparaging comments about Hickson, Wolmanized wood, or CCA-treated products or about Hickson's knowledge of injuries caused by exposure to Wolmanized products or CCA-treated wood.

On July 20, 2000, Hickson sent the following letter to its customers:

> You may have heard that someone has been saying untrue things about Wolmanized wood. Hickson has regarded those accusations as the serious attacks that they were intended to be. As a consequence, Hickson filed a lawsuit against Northern Crossarm Co., Inc., and Patrick Bischel.
> The nature of the lawsuit is described in the attached preliminary injunction, which has been entered by the federal court against the Defendants.
> As you will see from reading pages 3 and 4 of the enclosure, Northern Crossarm and Mr. Bischel are enjoined from making false, misleading and/or disparaging statements regarding Hickson, Wolmanized goods and services, or CCA-treated wood; and from engaging in any communication that misleads or misinforms consumers or constitutes any deceptive misrepresentation.
> In the event that you witness or hear of any act by Northern Crossarm or Mr. Bischel that may constitute a violation of the Preliminary Injunction, please contact Bill Baldwin at the Hickson office shown on this letterhead.

In response to the Hickson letter, Northern filed a counterclaim against

4

Hickson, alleging libel and tortious interference with contractual and business relations. Both Hickson and Northern filed motions for summary judgment on the respective claims, and, as noted, the district court granted both.

## DISCUSSION

A.    Standard of Review

"We review a district court's grant of summary judgment de novo, applying the same legal standards applied by the district court." Valley Drug Co. v. Geneva Pharms., 344 F.3d 1294, 1303 (11th Cir. 2003) (citing Bailey v. Allgas, Inc., 284 F.3d 1237, 1242 (11th Cir. 2002)).

B.    Summary Judgment Standard

Federal Rule of Civil Procedure 56(c) provides that summary judgment shall be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."

An issue of fact is "material" if, under the applicable substantive law, it might affect the outcome of the case. Allen v. Tyson Foods, 121 F.3d 642, 646 (11th Cir. 1997) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11th Cir. 1992)).

5

An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party. Id. A court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251, 252.

The moving party bears "the initial responsibility of informing the . . . court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986). Where the nonmoving party bears the burden of proof at trial, the moving party may discharge this "initial responsibility" by showing that there is an absence of evidence to support the nonmoving party's case or by showing that the nonmoving party will be unable to prove its case at trial. United States v. Four Parcels of Real Property, 941 F.2d 1428, 1437-38 (11th Cir. 1991). To survive summary judgment, the nonmoving party bearing the ultimate burden of proof at trial must come forward with evidence sufficient to withstand a directed verdict motion. Fitzpatrick v. Atlanta, 2 F.3d 1112, 1116 (11th Cir. 1993).

On summary judgment, "the evidence of the non-movant is to be believed."

6

Anderson, 477 U.S. at 255. "The district court should resolve all reasonable doubts about the facts in favor of the non-movant, and draw all justifiable inferences . . . in his favor." Four Parcels, 941 F.2d at 1428 (internal quotations and citations omitted).

C.     Northern's Motion for Summary Judgment

We consider each of Hickson's claims in turn.

1.     Lanham Act claim

Section 43(a) of the Lanham Act provides:

(1) Any person who, on or in connection with any goods or services, or any container for goods, uses in commerce any word, term, name, symbol, or device, or any combination thereof, or any false designation of origin, false or misleading description of fact, or false or misleading representation of fact, which . . . (B) in commercial advertising or promotion, misrepresents the nature, characteristics, qualities, or geographic origin of his or her or another person's goods, services, or commercial activities, shall be liable in a civil action by any person who believes that he or she is or is likely to be damaged by such act.

15 U.S.C. § 1125(a).

To succeed on a false advertising claim under § 43(a)(1)(B) of the Lanham Act, a plaintiff must establish that (1) the advertisements of the opposing party were false or misleading; (2) the advertisementss deceived, or had the capacity to deceive, consumers; (3) the deception had a material effect on purchasing decisions; (4) the misrepresented product or service affects interstate commerce;

7

and (5) the movant has been -- or is likely to be -- injured as a result of the false advertising. Johnson & Johnson Vision Care, Inc. v. 1-800 Contacts, Inc., 299 F.3d 1242, 1247 (11th Cir. 2002) (citing ALPO Petfoods, Inc. v. Ralston Purina Co., 913 F.2d 958, 964 (D.C. Cir. 1990)); United Industries Corp. v. Clorox Co., 140 F.3d 1175, 1180 (8th Cir. 1998).

The first element of the Lanham Act test requires that the plaintiff show that the statements at issue were either "(1) commercial claims that are literally false as a factual matter" or "(2) claims that may be literally true or ambiguous but which implicitly convey a false impression, are misleading in context, or likely to deceive consumers." Clorox, 140 F.3d at 1180. We agree with the district court's analysis and conclusion that the OUCH! advertisement was not literally false and Hickson elected not to challenge this finding on appeal. Hickson argues that the OUCH! advertisement was literally true but misleading.

A plaintiff attempting to establish the second kind of falsehood, that an advertisement is literally true but misleading, must "present evidence of deception" in the form of consumer surveys, market research, expert testimony, or other evidence. 1-800 Contacts, 299 F.3d at 1247. Consumer survey research often is a key part of a Lanham Act claim alleging that an advertisement is misleading or deceptive. Johnson & Johnson*Merck Consumer Pharmaceuticals

8

Co. v. Smithkline Beecham Corp., 960 F.2d 294, 298 (2d Cir. 1992) ("[T]he success of a plaintiff's implied falsity claim usually turns on the persuasiveness of a consumer survey."); Clorox, 140 F.3d at 1183.

Hickson's consumer evidence was before the court, but the court apparently overlooked it in granting summary judgment on Hickson's Lanham Act claims. Hickson's expert, Dr. Michael Mazis, submitted a declaration and statement with Hickson's Response To Defendant's Motion For Summary Judgment and Hickson's Response to "Defendant's Statement Of Material Facts As To Which There Is No Genuine Issue To Be Tried." Dr. Mazis' findings were referenced several times in the Responses, although the point was not prominently highlighted in argument by counsel. The district court did not address Dr. Mazis' research in its order, which points out the importance of consumer survey research, and then states, "Plaintiff offers no reliable consumer or market research demonstrating consumer deception . . . ." Hickson Corp. v. N. Crossarm Co., 235 F. Supp. 2d 1352, 1359 (N.D. Ga. 2002).

Northern Crossarm's contention at oral argument that "Truth is an absolute defense" is good law when applied to Hickson's state law libel claim, but misses the point on the Lanham Act claim. The literal truth of Northern Crossarm's statement is immaterial to the necessity of reviewing and weighing the consumer

survey research in considering Hickson's Lanham Act claim that the OUCH! advertisement was misleading.

Because the district court inadvertently disregarded the consumer survey research in the record, we vacate its grant of summary judgment on that claim.

2.    State law and common law claims

The district court noted that the parties' arguments were the same for all claims and applied its analysis and conclusions in the Lanham Act claim to the state law claims. The state claims stand or fall on state law as applied to their peculiar facts. We vacate the district court's categorical rejection of Hickson's state law claims. Rulings not affected by the error of overlooking the consumer survey evidence are affirmed.

We affirm summary judgment on Hickson's tortious interference claim. To prevail on claims of tortious interference with contract or business relationships, a plaintiff must show that a defendant acted improperly, without privilege, and with intent to induce third parties not to enter into or continue business or contractual relations with the plaintiff. Parks v. Multimedia Techs., Inc., 239 Ga. App. 282, 291 (Ga. App. 1999). There was no error in the district court's finding that Northern acted in good faith and without an intent to deceive. Hickson, 235 F. Supp. 2d at 1360.

10

Truth is a complete defense to libel under Georgia law. As noted, because the district court found that the OUCH! advertisement is literally true, we affirm the summary judgment for Northern on this libel claim. <u>Wolf v. Ramsey</u>, 253 F. Supp. 2d 1323, 1349 (N.D. Ga. 2003); <u>Watkins v. Laser/Print-Atlanta, Inc.</u>, 183 Ga. App. 172, 173 (Ga. App. 1987) ("It is axiomatic that truth is an absolute defense in a defamation action, O.C.G.A. § 51-5-6 . . . .").

We remand the remaining claims for consideration under Georgia law.

D.    Hickson's Motion for Summary Judgment

Northern brought a counterclaim against Hickson alleging libel and tortious interference with contractual and business relations. The district court appropriately found that Hickson's July 20, 2000, letter was privileged because it "was sent in good faith, in an attempt to support a legitimate business interest, was properly limited in scope, and was sent to the appropriate persons on a proper occasion." <u>Hickson Corp. v. N. Crossarm Co.</u>, 235 F. Supp. 2d 1352, 1361 (N.D. Ga. 2002). Accordingly, the summary judgment for Hickson on this claim is affirmed.

**AFFIRMED IN PART, VACATED AND REMANDED IN PART; EACH PARTY TO PAY ITS OWN COSTS IN THIS COURT.**

11