[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

FILED
U.S. COURT OF APPEALS
ELEVENTH CIRCUIT
JUNE 24, 2011
JOHN LEY
CLERK

No. 10-11722
Non-Argument Calendar

D.C. Docket No. 6:08-cv-01915-ACC-DAB

DIANA VEGA,

Plaintiff-Appellant,

versus

INVSCO GROUP, LTD.,

Defendant-Appellee.

_____

Appeal from the United States District Court for the
Middle District of Florida

_____

(June 24, 2011)

Before TJOFLAT, MARTIN and ANDERSON, Circuit Judges.

PER CURIAM:

In 2004, Invsco Group Ltd., a real estate developer headquartered in Chicago, Illinois, acquired an apartment complex in Orlando, Florida, Bella Vita, for the purpose of converting its apartments into condominiums to be known as the Sand Lake Private Residences. In October of that year, Invsco hired Diana Vega as Sand Lake's Property Manager. Around the same time, Invsco hired Michael Galvin as Sand Lake's Assistant Project Manager. In June 2005, Invsco acquired another property, Plantation Park Private Residences. Galvin became its Assistant Project Manager, and Vega replaced him as Sand Lake's Assistant Project Manager. In late 2005, Vega became Project Manager at still another Invsco development, Bermuda Dunes Private Residences. Galvin, in the meantime, became Plantation's Project Manager.

By mid-2006, the bottom had fallen out of the condominium market in Orlando, and Invsco had to cut its staff. By November 2006, as the situation worsened, Galvin and Vega faced demotion. Galvin accepted a position in Invsco's Contract Administration department. Vega was offered the position of Property Manager at Bermuda Dunes, a position Marlin Canario then occupied. Vega declined the offer, explaining her decision in this email:

> I have been very happy with my position and Invsco, and very grateful for all the opportunities that Invsco has given me. . . . My preference, however, is to continue working with Invsco in the area of development, not CRS or Condo, and my first preference would be to

2

find employment with another developer before going back to property management.

Vega soon had a change of mind, however, and accepted Invsco's offer; she replaced Canario as Bermuda Dunes Property Manager. Vega held this position for several months. But the economy continued to decline, so Invsco had to make further cuts in its staff. Invsco had three Property Managers; Vega was the highest paid. Invsco consolidated the Property Manager positions at Bermuda Dunes and Sand Lake, and offered the consolidated position to one of the Property Managers, Carlos Gregory. Vega's last day of work was March 30, 2007. That day she sent an email to her superiors at Invsco, which said: "Thank you for the opportunity to work with American Invsco. I will walk away with more knowledge, experience, great memories and new friends."

On February 11, 2008, Vega brought this action against Invsco, claiming, in Count I, that Invsco had violated Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000 *et seq.*, and 42 U.S.C. § 1981, by discriminating against her on account of her race (she is black), and, in Count II, by discriminating against her on account of her sex. She alleged that Invsco treated a white male, Galvin, better than it treated her in terms of compensation, promotions, and positions, even though he had "no prior property management experience . . . and very little construction experience." Invsco denied the alleged discriminatory treatment and

3

asserted that Vega was terminated due to a reduction in force in response to the economic downturn.

After discovery closed, the district court granted Invsco summary judgment. Vega appeals, arguing that she established a *prima facie* case of discrimination, that she rebutted the legitimate nondiscriminatory reason proffered by Invsco for her demotion and subsequent termination as pretextual, and that her case should be submitted to a jury.

## I.

We review a district court order granting summary judgment *de novo*, and view all of the facts in the record in the light most favorable to the non-moving party, drawing inferences in her favor. *Houston v. Williams*, 547 F.3d 1357, 1361 (11th Cir. 2008). We can affirm a grant of summary judgment on any basis supported by the record. *Lucas v. W.W. Grainger, Inc.*, 257 F.3d 1249, 1256 (11th Cir. 2001).

Summary judgment requires the movant to show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case. An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find

for the nonmoving party." *Hickson Corp. v. N. Crossarm Co.*, 357 F.3d 1256, 1260 (11th Cir. 2004) (citations omitted). If the movant satisfies the burden of production, showing that there is no genuine issue of fact, then "the nonmoving party must present evidence beyond the pleadings showing that a reasonable jury could find in its favor." *Shiver v. Chertoff*, 549 F.3d 1342, 1343 (11th Cir. 2008) (citation and quotation omitted). Although we, like the district court, assess the evidence in the light most favorable to the nonmoving party, the nonmoving party cannot create a genuine issue of material fact through speculation, conjecture, or evidence that is "merely colorable" or "not significantly probative." *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-50, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986); *see also* Fed.R.Civ.P. 56(e)(2) ("When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial.").

Both § 1981 and Title VII "are subject to the same standards of proof and employ the same analytical framework." *Bryant v. Jones*, 575 F.3d 1281, 1307 (11th Cir. 2009). Intentional discrimination claims under the disparate treatment theory can be proven using either direct or circumstantial evidence. *Burke-Fowler v. Orange County, Fla.*, 447 F.3d 1319, 1322-23 (11th Cir. 2006). Where, as here,

5

a claim involves circumstantial evidence of discrimination, the district court analyzes the case using the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). *Burke-Fowler*, 447 F.3d at 1323. Under *McDonnell Douglas*, the plaintiff bears the initial burden of presenting sufficient evidence to allow a reasonable jury to determine that she has satisfied the elements of her *prima facie* case. *McDonnell Douglas*, 411 U.S. at 802, 93 S.Ct. at 1824.

To make out a *prima facie* case for disparate treatment on account of race under § 1981 and Title VII, or gender under Title VII, the plaintiff can show that, among other things, her employer treated similarly situated employees outside of her protected class more favorably than she was treated. *See Burke-Fowler*, 447 F.3d at 1323; *Nix v. WLCY Radio/Rahall Comm.*, 738 F.2d 1181, 1185 (11th Cir. 1984) (noting that *prima facie* formulations are not rigid). We have explained that, particularly in cases involving employee discipline or misconduct, the individual that the plaintiff identifies as her comparator must be similarly situated "in all relevant respects" and that the comparator's misconduct must be "*nearly identical* to the plaintiff." *See Holifield v. Reno,* 115 F.3d 1555, 1562 (11th Cir.1997) ("all relevant respects")*; Maniccia v. Brown*, 171 F.3d 1364, 1368 (11th Cir.1999) ("nearly identical"). However, a failure to identify a comparator does

6

not end the analysis of a termination claim because "[i]f a plaintiff fails to show the existence of a similarly situated employee, summary judgment is appropriate where no other evidence of discrimination is present." *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1092 (11th Cir. 2004) (citation, quotation, and emphasis omitted).

To establish a *prima facie* case in a demotion context—assuming the demotion to be sufficiently adverse—the plaintiff could show that she was replaced by someone outside her protected class. *See Hinson v. Clinch County, Georgia Bd. of Educ.*, 231 F.3d 821, 828 (11th Cir. 2000). Moreover, as noted by the district court, in cases where a position was eliminated as part of a reduction in force, a modified *prima facie* formulation may apply, which allows a case of discrimination to be established by presenting evidence showing, not dissimilar treatment, but that the employer intended to discriminate against the plaintiff on the basis of a protected characteristic, such as race. *See, e.g., Smith v. J. Smith Lanier & Co.*, 352 F.3d 1342, 1344 (11th Cir. 2003).

We find no error in the district court's grant of summary judgment here. Because Vega offered only circumstantial evidence of disparate treatment, the *McDonnell Douglas* framework applied. She failed, however, to establish a *prima facie* case of discrimination. First, to the extent she was required to identify a

comparator or someone similarly situated, she failed to do so. Galvin was not a valid comparator because: (i) he had a college and master's degree, while Vega had neither; (ii) he had significant construction experience, while Vega did not; and (iii) during their respective times at Invsco, Galvin and Vega often were on different tracks, with Vega operating in the property management area, and Galvin operating almost exclusively in the project management area, up until his demotion to contract administration. Moreover, when Vega was terminated, she was working in property management and Galvin was working in contract administration, with duties that also involved construction, tax research, and special projects. Galvin and Vega had different experience, credentials, job titles, and qualifications, and contrary to Vega's assertion, this analysis is properly considered in the *prima facie* stage. Therefore, Galvin did not qualify as a valid comparator, to the extent Vega was required to show this.

Second, to the extent Vega was required to show "other evidence of discrimination" or that Invsco "intended to discriminate against [her] on the basis of" her race or gender, she failed to do so. Vega submitted little, if any, evidence showing race or gender animus generally. She pointed to no such evidence involving herself personally. We must consider these shortcomings in Vega's presentation in the face of undisputed evidence of an economic downturn affecting

Invsco's business, active consideration by company officials of Vega's and Galvin's respective strengths, weaknesses, and work experiences, and a desire to reduce expenses. Thus, Vega failed to demonstrate a *prima facie* case of unlawful employment discrimination.

II.

Under *McDonnell Douglas,* if a plaintiff-employee establishes a *prima facie* case, and the defendant articulates a legitimate reason for its employment action, the burden shifts to the plaintiff to offer evidence that the reason is pretextual. *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1087 (11th Cir. 2004). An employer's stated reason is not a pretext unless it is shown that both: (1) the reason was false; and (2) the real reason was unlawful. *St. Mary's Honor Ctr. v. Hicks*, 509 U.S. 502, 515, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). A plaintiff may show a pretext either "directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Jackson v. Ala. State Tenure Comm'n*, 405 F.3d 1276, 1289 (11th Cir. 2005). In both instances, a plaintiff must show pretext with "concrete evidence in the form of specific facts." *Bryant*, 575 F.3d at 1308. Mere "conclusory allegations and assertions" will not suffice. *Id.* Moreover, a plaintiff cannot recast the employer's articulated reason

9

but rather, "must meet it head on and rebut it." *Wilson*, 376 F.3d at 1088 (quotation omitted).

Assuming *arguendo* that Vega established a *prima facie* case of employment discrimination, the district court still did not err by granting Invsco summary judgment. Vega failed to rebut Invsco's proffered legitimate and nondiscriminatory reasons for its decisions. Invsco stated that it demoted Vega and ultimately terminated her in response to economic pressures caused by the decline in the Florida real estate market, beginning in 2006. It stated that it placed her into property management, rather than Galvin's position in contracts administration with special projects and construction duties, because her skills, knowledge, and experience, were best suited to the property management position. To rebut these reasons, Vega would have had to present evidence to back her assertions. However, Vega merely presented argument, not evidence.

As she did before the district court, Vega contends that she was a better fit for the position Galvin received, Galvin was ill-equipped to handle the position he received, Invsco's inconsistent statements demonstrated pretext, and that her demotion was a ruse to provide cover for her subsequent termination on the basis of her race or gender. However, she did not provide evidence to back these assertions. The fact that various individuals swore that Galvin assumed project

10

manager duties, does not mean that Invsco's stated reasons for its actions were untrue or demonstrated racial or gender animus. To show pretext based on relative qualifications, Vega would have to present evidence of truly similar qualifications, which she did not do. Further, she presented no evidence to contradict Invsco's economic justification for its decisions, and, indeed, noted the lowered sales at Bermuda Dunes in two emails while still employed with Invsco. Consequently, Vega failed to rebut Invsco's proffered nondiscriminatory reasons for demoting her in 2006 and terminating her in 2007.

AFFIRMED.