### Reva J. LAMMERS, Plaintiff,

v.

### USAA LIFE INSURANCE COMPANY, Defendant.

### Case No. 8:10–cv–747–T–27AEP.

United States District Court,
M.D. Florida,
Tampa Division.

July 15, 2011.

Joseph Anthony Porcelli, Law Office of Joseph A. Porcelli, PA, New Port Richey, FL, for Plaintiff.

Jerel C. Dawson, Jonathan M. Fordin, William J. Gallwey, III, Shutts & Bowen, LLP, Miami, FL, for Defendant.

## ORDER

JAMES D. WHITTEMORE, District Judge.

**BEFORE THE COURT** is Defendant's motion for summary judgment (Dkt. 13). Plaintiff has responded in opposition (Dkt. 16), and Defendant has filed a reply (Dkt. 26). The parties have submitted affidavits in support of their respective positions (Dkts. 14, 24). Upon consideration, Defendant's motion for summary judgment (Dkt. 13) is **GRANTED.**

### Background

Plaintiff is the sole beneficiary of a life insurance policy that USAA issued to her husband. She sues to compel payment of the policy proceeds. The material facts are not in dispute.

Plaintiff's husband died on March 13, 2008. Nearly three years before his death, Plaintiffs husband stopped making the premium payments on the life insurance policy. The last payment he made was on June 7, 2005. He never made the next payment, which was due on July 9, 2005, or any later premium payments.

The policy provides:

If a premium is not paid when due, the policy will terminate except as indicated elsewhere in the policy.

(Dkt. 14–2 at 8). The policy allowed a 31-day grace period for late premium payments, after which the policy lapsed. (Dkt. 14–2 at 9). If the policy lapsed, the insured could apply for reinstatement "at any time within one year from the due date of the last unpaid premium." (*Id.*). However, after the expiration of the reinstatement period, the policy would terminate, effective the due date of the last unpaid premium.

There is no record evidence that Plaintiff's husband made any payments during the grace period. Nor is there any evidence that he applied for reinstatement during, or after, the reinstatement period. Notwithstanding, Plaintiff argues that the policy did not terminate. She relies on a rider which provides:

We will waive the payment of premiums which become due after the beginning

of, and during the continuance of, the total and permanent disability of the Insured....

Before any premium is waived, written notice of claim and due proof of the total and permanent disability of the Insured must be presented to the Company at our Home Office. The claim must be presented *while the Insured is living* and still totally and permanently disabled.

However, a claim under this rider will not be denied or diminished because of failure to comply with the above if:

1. The Insured shows that it was not reasonably possible to comply; and

2. The Insured did comply as soon as it was reasonably possible to do so.

(Dkt. 14–2 at 20–21) (emphasis added). Although Plaintiff contends that her husband had a 'total and permanent disability,' it is undisputed that no written notice was ever provided to Defendant while her husband was alive. The sole issue, therefore, is whether Plaintiff's husband was excused from complying with the notice provision.

Plaintiff's position is that strict compliance was impossible or unreasonable because her husband was incapacitated. The only record evidence to support this position consists of sworn letters from six individuals: an attorney who represented Plaintiff's husband in a separate case, the primary nurse who cared for Plaintiff's husband while he was on hemodialysis, two of his brothers-in-law, his step-child, and an athletic trainer. The letters essentially describe, in general terms, the decline of Plaintiff's husband's mental and physical abilities before his death.[1] Defendant argues that summary judgment is proper

because the letters shed no light on her husband's mental and physical capacities at the crucial point in time when he ceased paying the insurance premiums without providing notice of any disability. The Court agrees.

## Standard

Summary judgment is proper if following discovery, the pleadings, depositions, answers to interrogatories, affidavits and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); Fed.R.Civ.P. 56. "An issue of fact is 'material' if, under the applicable substantive law, it might affect the outcome of the case." *Hickson Corp. v. Northern Crossarm Co.*, 357 F.3d 1256, 1259 (11th Cir.2004). "An issue of fact is 'genuine' if the record taken as a whole could lead a rational trier of fact to find for the nonmoving party." *Id.* at 1260.

All justifiable inferences and all reasonable doubts about the facts should be resolved in favor of the nonmoving party. *Hickson Corp.*, 357 F.3d at 1260. The Court will not weigh the evidence or make findings of fact. *Morrison v. Amway Corp.*, 323 F.3d 920, 924 (11th Cir.2003). "Instead, the court's role is limited to deciding whether there is sufficient evidence upon which a reasonable juror could find for the nonmoving party." *Id.*

## Discussion

 It has long been settled under Florida law that "a default in serving notice or proof of loss as required by a policy may be excused where the circumstances are such as to render strict compliance

---

1. Defendant argues that the letters are inadmissible lay opinion. The Court disagrees. The averments regarding the decline of the insured's abilities are rationally based on the witnesses' perceptions over a considerable period of time, and therefore, are properly admitted under Fed.R.Evid. 701.

with the requirements impossible or unreasonable and the insured has not failed to use due diligence." *Reliance Life Ins. Co. of Pittsburgh, Pa. v. Lynch,* 144 Fla. 50, 197 So. 723, 724 (1940); *Kirkland v. Guardian Life Ins. Co. of Am.,* 352 Fed. Appx. 293, 299 (11th Cir.2009). "Thus a default may be excused by the physical or mental incapacity of the insured or the claimant under the policy." *Reliance,* 197 So. at 724.

■ Plaintiff's position hangs on the holding of *Reliance,* which excused an insured from providing notice of his disability, notwithstanding a policy provision remarkably similar to the one in this case. But that is where the similarity ends. Unlike this action, the parties in *Reliance* stipulated that "on July 8, 1931, [the insured] was stricken by a wasting and fatal malady and went to bed and there remained until October, 1931 when he was taken to a hospital, and the plaintiff was at the hospital with him from October until January 2, 1932, when he died." *Reliance,* 197 So. at 724. The record in *Reliance* showed that "the policy was in force and effect" when the insured became incapacitated on July 8, 1931. *Id.* at 723. Here, by contrast, there is no evidence to show when Plaintiff's husband began to experience the loss of his mental and physical abilities, much less when his incapacitation reached a point that it was impossible or unreasonable for him to provide notice of his disability. Specifically, there is nothing in the record to demonstrate that the policy was in force at the time Plaintiff's husband became incapacitated.

Absent evidence that the insured became incapacitated before the policy terminated, *Reliance*'s exception is simply unavailable. *Reliance* stands for the proposition that an insured will be excused from the requirements of a notice provision when it was impossible or unreason-

able to comply. 197 So. at 724. But there is nothing in *Reliance* that would excuse an insured from providing notice of a disability at a point in time when he was not incapacitated. Nor is there anything in *Reliance* that would revive a terminated policy simply because the insured became incapacitated at a later date. Therefore, to avoid summary judgment, Plaintiff was required to show that her husband became incapacitated before the policy terminated. The record is devoid of evidence on this crucial point.

The sworn letters submitted by Plaintiff do not demonstrate or even raise a genuine issue of fact as to whether Plaintiff's husband was incapacitated before the policy terminated. The letters are all dated more than three years after the policy lapsed, are not specific about when the declarants observed the condition of Plaintiff's husband, and certainly lack specificity as to when he suffered from the physical or mental infirmities alluded to, or the extent of those infirmities at any particular time. To be sure, one letter states that Plaintiff's husband had been sick for "most of th[e] years" he spent with Plaintiff. (Dkt. 24 at 5). There is no evidence showing how many years that was. Further, the letter states that he "did quiet [sic] well the first few years of his illness." (*Id.*). Another letter states that "many years" of medication and dialysis "took its toll on his ability to function." (Dkt. 24 at 6). Neither letter offers specific evidence showing that the insured was incapacitated some three years before he died, when the policy terminated. The only evidence that describes when the insured's incapacity arose suggests quite the opposite. The letter from his hemodialysis nurse states that he experienced "rapid deterioration . . . physically and mentally" before his death. (Dkt. 24 at 3).

In sum, the sworn letters submitted by Plaintiff do not raise a genuine issue of material fact bearing on whether Plaintiff's husband was capable of complying with the premium waiver provision of the policy, or whether his default was excused by his physical or mental disability. Simply put, the letters lack specifics. When a motion for summary judgment is properly filed, the party opposing summary judgment must, by affidavit or otherwise, "set forth specific facts showing that there is a genuine issue for trial." *Evers v. Gen. Motors Corp.*, 770 F.2d 984, 986 (11th Cir.1985); *Gossett v. Du–Ra–Kel Corp.*, 569 F.2d 869, 872 (5th Cir.1978) ("[O]ne who resists summary judgment must meet the movant's affidavits with opposing affidavits setting forth specific facts to show why there is an issue for trial.");[2] *see also* Fed.R.Civ.P. 56. In this Circuit, "conclusory allegations without specific supporting facts have no probative value." *Evers,* 770 F.2d at 986; *Leigh v. Warner Bros., Inc.*, 212 F.3d 1210, 1217 (11th Cir.2000).

There is no record evidence demonstrating that Plaintiff's husband suffered from an incapacity when the policy terminated. Plaintiff therefore cannot avail herself of *Reliance*'s exception to the policy's notice requirement.

### Conclusion

Accordingly, Defendant's motion for summary judgment (Dkt. 13) is GRANTED. The Clerk is directed to ENTER JUDGMENT in favor of Defendant and to CLOSE this case.

---

2. Decisions of the Fifth Circuit issued before October 1, 1981 are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard,* *Ala.,* 661 F.2d 1206, 1207 (11th Cir.1981) (en banc).