**UNITED STATES of America,**
**Plaintiff,**

v.

**$9,980 SEIZED FROM COMMUNITY BANK AND TRUST ACCOUNT NO. 067–0022713, In the Name of Terry Kaiser, and $29,120 Seized from Community Bank and Trust Account No. 067–009131, In the Name of Terry Kaiser, Defendants.**

**Case No. 5:11–cv–177–Oc–37TBS.**

United States District Court,
M.D. Florida,
Ocala Division.

Jan. 17, 2012.

Nicole M. Andrejko, U.S. Attorney's Office, Orlando, FL, for Plaintiff.

David Gerhardt Mengers, Law Office of David Mengers, Ocala, FL, for Defendant.

**ORDER**

ROY B. DALTON JR., District Judge.

The matter is before the Court on the following:

1. The United States of America's Motion for Summary Judgment (Doc. No. 17), filed December 20, 2011; and

2. Claimant's Response (Doc. No. 18), filed December 30, 2011.

**BACKGROUND**

Federal law requires banks and other financial institutions to file reports with the Secretary of the Treasury whenever they are involved in a cash transaction that exceeds $10,000. *See* 31 U.S.C. § 5313; 31 C.F.R. § 103.22(a). It is illegal to "structure" transactions—i.e., to break up a single transaction above the reporting threshold into two or more separate transactions—for the purpose of evading a financial institution's reporting requirement. *See* 31 U.S.C. § 5324; *see also U.S. v. Scanio,* 705 F.Supp. 768, 776

**1282**

(W.D.N.Y.1988) ("The term 'structure,' as it relates to an individual's conduct of a currency transaction, very simply refers to the manner in which the transaction is effected."). The United States of America (the "Government") contends Terry Kaiser deposited $39,100 in funds in two bank accounts in Ocala, Florida, in a series of structured transactions in violation of Section 5324(a). It seized the funds involved in those transactions and then brought this *in rem* civil forfeiture action pursuant to Title 31 U.S.C. § 5317(c)(2).

Almost all of the facts are undisputed. In August and October of 2010, Kaiser opened checking and savings accounts at the Community Bank and Trust of Florida (the "Bank"). She is the sole owner of those accounts, and the only person authorized to make deposits into them. On October 28, 2010, Kaiser met with an employee of the Bank. She asked first about the availability of a safe deposit box and, when told a box large enough to serve her needs was not available, asked the employee how much money she could deposit without it being reported. In response, the employee gave Kaiser a pamphlet with the title, "Notice to Customers: A CTR Reference Guide." The pamphlet explained that federal law required the Bank to report all currency transactions over $10,000 (a "CTR") conducted by or on behalf of one person in a single day. The pamphlet explained further that the Bank was required to report multiple transactions made in a single day when the total of such transactions is greater than $10,000. The pamphlet also indicated that

it was a crime to structure deposits in an attempt to avoid triggering the Bank's reporting requirement.

Nevertheless, on that same day, Kaiser deposited $9,980 in cash into her checking account. She deposited $9,330 in cash into her savings account the next day. She deposited a similar amount into her savings account on the following day, and did so once more the day after that.[1] Kaiser obtained these funds over a period of about two years from the joint checking account that she maintained with her former husband. The deposits were made just before Kaiser and her husband finalized their divorce. Kaiser's brother-in-law, who apparently knew about the large sum of cash in her possession, had suggested to her that she not make large deposits because Kaiser's husband could possibly learn about them.

The Government now seeks summary judgment on its claim of forfeiture. Kaiser opposes. This matter is ripe for adjudication.

## APPLICABLE STANDARDS

Courts "shall grant summary judgment if the movant shows that there is no genuine. dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a); *accord Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Hickson Corp. v. N. Crossarm Co.,* 357 F.3d 1256, 1259 (11th Cir.2004). An issue of fact is "material" under the applicable substantive law if it might affect the

1. Kaiser's deposits were not part of a larger scheme to launder dirty money, and she is not what the public may consider a "typical" money launderer, i.e., a "smurf," who, like the little blue cartoon character, engages a simple but bold adventure, albeit one which involves running around to different banks to conduct transactions just below the reporting requirement. *See* Sarah N. Welling, *Smurfs,* *Money Laundering, and the Federal Criminal Law: the Crime of Structuring Transactions,* 41 Fla. L.Rev. 287 (1989). Rather, the conduct at issue here is what commentators call "perfect" or *Anzalone*-type structuring. *See* Courtney J. Linn, *Redefining the Bank Secrecy Act: Currency Reporting and the Crime of Structuring,* 50 Santa Clara L.Rev. 407 (2010).

outcome of the case. *Hickson Corp.*, 357 F.3d at 1259. An issue of fact is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.* at 1260. The court must decide "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." *Id.*

The party moving for summary judgment has the burden of proving that: (1) there is no genuine issue as to any material fact, and (2) it is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In determining whether the moving party has satisfied its burden, the court considers all inferences drawn from the underlying facts in the light most favorable to the party opposing the motion and resolves all reasonable doubts against the moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. If a reasonable fact finder could draw more than one inference from the facts and that inference creates an issue of material fact, the court must not grant summary judgment. *Hairston v. Gainesville Sun Pub. Co.*, 9 F.3d 913, 919 (11th Cir. 1993). On the other hand, summary judgment must be granted "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which the party will bear the burden of proof at trial." *Celotex Corp.*, 477 U.S. at 322, 106 S.Ct. 2548. In addition, when a claimant fails to produce "anything more than a repetition of his conclusory allegations," summary judgment for the movant is "not only proper but required." *Morris v. Ross*, 663 F.2d 1032, 1034 (11th Cir.1981).

## DISCUSSION

■ The Government's Motion boils down to intent. Intent is an element of a forfeiture claim based on a violation of the anti-structuring statute. *U.S. v. Dollar Bank Money Market Account No. 1591768456*, 980 F.2d 233, 238 (3d Cir. 1992). It is the only element contested by Kaiser. Therefore, all the other elements are deemed admitted. Fed.R.Civ.P. 56(e) ("If a party fails to properly ... address another party's assertion of fact as required by Rule 56(c), the court may ... consider the fact undisputed for the purposes of the motion.").

Liability under Section 5324 attaches when a person (1) knows about a bank's reporting requirement and (2) acted with the intent to evade this reporting requirement. *United States v. Hovind*, 305 Fed. Appx. 615, 621 (11th Cir.2008). The testimony of record, including but not limited to the pamphlet, without doubt show that Kaiser was aware that the Bank was required by federal law to report all transactions exceeding $10,000 in a single day.

Kaiser relies on *United States v. Aversa*, 984 F.2d 493, 498 (1st Cir.1993), to argue that she intended to hide the transactions from her spouse, not the Government. Further, she argues that she made a mistake in interpreting the information provided by the pamphlet. Thus, according to Kaiser, she did not possess the requisite intent to violate Section 5324(a) and is entitled to raise a mistake of law defense.

■ The Court recognizes Kaiser may have been motivated primarily by her desire to hide her possession of a large sum of money from her former husband, but she chose to do so by structuring her transactions in such a way as to prevent the Bank from reporting her deposits to the Government as required by law. That is the essence of the anti-structuring statute. It "aims to prevent people from either causing a bank to fail to file a required report or defeating the government's efforts to identify large cash transactions by splitting up a cash hoard in a

manner that avoids triggering a bank's reporting requirements." *U.S. v. Paul,* 23 F.3d 365, 367–68 (11th Cir.1994).

Congress quite clearly intended to criminalize conduct which is wrong because it is prohibited. The perniciousness of regulatory crimes of this type is plain. One leading treatise notes:

> The early criminal law was "well integrated with the mores of the time," so that "a defendant's mistake as to the conduct of the criminal law * * * would not ordinarily affect his moral guilt." But the vast network of regulatory offenses which make up a large part of today's criminal law does not stem from the mores of the community, and so "moral education no longer serves us as a guide as to what is prohibited." Under these circumstances, where one's moral attitudes may not be relied upon to avoid the forbidden conduct, it may seem particularly severe for the law *never* to recognize ignorance or mistake of the criminal law as a defense. Moreover, some would question whether it is desirable to characterize as criminal an individual who has not demonstrated any degree of social dangerousness, that is, a person whose conduct is not antisocial because (I) he reasonably thought the conduct was not criminal, and (ii) the conduct is not by its nature immoral.

1 Wayne R. LaFave, *Substantive Criminal Laws,* 409–10 (2d ed. 2003) (emphasis in original) (footnote omitted). While the Court is not unmindful of the harshness of the anti-structuring statute, that fact does not alter its provisions. This is the prerogative of the Congress and, wisely or not, there is no longer a "willfulness" requirement in this statute. *See U.S. v. Vazquez,* 53 F.3d 1216, 1218 n. 2 (11th Cir.1995). "The only mental state apparently required ... is a purpose to evade the filing requirement." *Id.* Kaiser's first argument may reflect her motivation, but it does not disturb her intent to evade a report required by federal law.[2] Kaiser's second argument is not a valid defense to *this* crime.[3]

In view of the above, the Court concludes that this is one of those rare cases in which the intent of a party can be inferred from a cold record without the weighing of the party's credibility by the trier of fact.

## CONCLUSION

The Government's Motion for Summary Judgment (Doc. No. 17) is due to be **GRANTED.** The Government shall, within 14 days of the date of this Order, notify this Court of the form of final judgment to be entered in the case.

---

**2.** *See United States v. Gibbons,* 968 F.2d 639, 645 (8th Cir.1992) ("It is immaterial that [the defendant's] apparent purpose for [structuring] was to prevent his ex-wife rather than the government from tracing the funds. The focus of the statute is on the structuring person's conduct, not on the reason why he did not want the transaction report filed."); *cf. United States v. Tatoyan,* 474 F.3d 1174, 1179 (9th Cir.2007) ("The government, therefore, was only required to prove that the [defendants] knew they were required to file a [CMIR] and that, for whatever reason, they deliberately evaded this requirement. Because motive is neither an element of the crimes nor a defense under either § 5322 or § 5332, the district court was within its discretion to exclude evidence [that funds came from a legitimate source].").

**3.** Kaiser does not argue that the seizure and forfeiture of the funds are excessive under the Excessive Fines Clause. *See U.S. v. Bajakajian,* 524 U.S. 321, 118 S.Ct. 2028, 141 L.Ed.2d 314 (1998)'; *U.S. v. Ahmad,* 213 F.3d 805, 815 (4th Cir.2000).