# IN THE SUPREME COURT OF IOWA

No. 20–0963

Submitted February 22, 2022—Filed June 17, 2022

Amended September 6, 2022

**J. JESUS CARRERAS** and **LOS PRIMOS AUTO SALES, LLC**
d/b/a **LOS PRIMOS AUTO SALES,**

Appellants,

vs.

**IOWA DEPARTMENT OF TRANSPORTATION, MOTOR VEHICLE DIVISION,**

Appellee.

On review from the Iowa Court of Appeals.

Appeal from the Iowa District Court for Polk County, Jeanie Vaudt, Judge.

Petitioner seeks further review of a court of appeals decision affirming the department of transportation's decision to rescind his license under Iowa Code section 322.3(12). **DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.**

Christensen, C.J., delivered the opinion of the court, in which Waterman and McDonald, JJ., joined, and in which Oxley and Appel, JJ., joined as to parts

II and III.C, and in which McDermott, J., joined as to parts II and III.A–B. Oxley, J., filed an opinion concurring in part and dissenting in part, in which Appel, J., joined. McDermott, J., filed an opinion concurring in part and dissenting in part. Mansfield, J., took no part in the consideration or decision of the case.

Todd M. Lantz (argued) and Elisabeth A. Archer of the Weinhardt Law Firm, Des Moines, for appellants.

Thomas J. Miller, Attorney General, Michelle E. Rabe (argued), Assistant Attorney General, for appellee.

**CHRISTENSEN, Chief Justice.**

This case presents a question of first impression involving the statutory interpretation of Iowa Code section 322.3(12) (2019). Specifically, we must determine whether a motor vehicle dealer licensee's federal structuring conviction for splitting cash deposits into several business accounts to avoid a federal reporting requirement is "in connection with selling or other activity relating to motor vehicles." *Id.* We also must determine whether there is substantial evidence for the license revocation and how the five-year license revocation period under section 322.3(12) operates.

The administrative law judge reversed the license revocation because the structuring conviction was not referencing or concerning the sale of motor vehicles. On appeal, the reviewing officer, district court, and court of appeals each determined that the structuring offense had a sufficient relation or nexus to the sale or other activity relating to motor vehicles and revocation was consistent with the purpose of chapter 322. However, the district court and court of appeals disagreed on how the five-year revocation operated: the district court determined the five-year period ran from the termination of judicial review proceedings, while the court of appeals held the license revocation could only occur within five years from the date of the conviction.

For the reasons explained below, we hold this structuring conviction— involving the bank deposits of motor vehicle sales proceeds into different business accounts—has a sufficient relation or nexus to be considered an "indictable offense in connection with selling or other activity relating to motor

vehicles." *Id.* We determine there is substantial evidence to revoke the motor vehicle dealer license. While Carreras's revocation started on the date of conviction, the revocation was stayed pending Carreras's challenge to the revocation order. The revocation period shall be extended by the length of the stay.

## I. Background Facts and Proceedings.

Husband and wife Jesus and Martha Carreras owned and operated Los Primos Auto Sales vehicle dealership in Des Moines.[1] In August 2017, Jesus and Martha Carreras were charged with multiple federal financial crimes related to the operation of their business. On September 6, 2018, Jesus pleaded guilty to one count of structuring transactions to avoid mandatory reporting requirements in violation of 31 U.S.C. § 5324(a), subsections (1) and (3) in exchange for dismissal of all other charges. On January 24, 2019, Jesus was sentenced to a term of probation.

Jesus admitted to the following as a factual basis for the guilty plea. Los Primos Auto Sales had at least three business accounts. Domestic financial institutions have a legal obligation to report transactions in excess of $10,000. *See* 26 U.S.C. § 6050I. From January 2014 to April 2017, Jesus and Martha Carreras, on one or more occasions, deliberately broke up cash deposits from Los Primos motor vehicle sale proceeds into amounts less than $10,000. These deposits were placed into their business accounts. Specifically, the deposits were

---

[1]We will refer to all petitioners, Jesus and Martha Carreras and their business, Los Primos Auto Sales, LLC, collectively as "Carreras" unless context dictates need for reference to a specific petitioner.

made in a manner to evade reporting obligations or "cause the financial institutions to fail to report transactions in excess of $10,000." The structured deposits combined for an amount of at least $111,835.

On April 2, 2019, the Iowa Department of Transportation (DOT) officially notified Carreras that it was revoking its Motor Vehicle Dealer License for a period of five years effective April 22 under Iowa Code section 322.3(12) because of the structuring conviction. The official notice also provided that the DOT would place the license on an automatic stay order if Carreras requested a revocation hearing. On April 16, Carreras timely appealed the license revocation, and the license revocation was placed on an automatic stay throughout the administrative proceedings. The assigned administrative law judge (ALJ) issued a proposed decision that rescinded the license revocation. The DOT appealed, and the reviewing officer reversed the ALJ's proposed decision.

On October 31, Carreras filed for judicial review of the license revocation in district court. The next day, Carreras filed a request with the DOT to stay the enforcement of the license revocation during the judicial review. The DOT previously informed Carreras that he would "need to file the request for stay in District Court" because the DOT "no longer ha[d] jurisdiction." Carreras responded that Iowa Code chapter 17A did not require "a motion in district court before the agency can grant a stay." The DOT concluded by stating that it would leave the decision of a stay "to the district court and [the DOT] do[es] plan to oppose it." On November 8, Carreras filed an application to stay the license revocation with the district court pursuant to the DOT's request. The district

court granted a temporary stay of the license revocation, concluding Los Primos would suffer an irreparable injury if the revocation was imposed during the proceedings.

The district court later upheld the DOT's license revocation and determined the DOT had substantial evidence to do so. Carreras filed a notice of appeal on the license revocation. The district court stayed enforcement of the license revocation until the completion of the appeal but tolled the entirety of the five-year revocation period. Carreras filed a separate notice of appeal regarding the tolling period. We consolidated those appeals and transferred the case to the court of appeals, which upheld the DOT's decision to rescind Carreras's license under section 322.3(12) and concluded the DOT had substantial evidence to do so. However, the court of appeals determined the district court lacked the authority to toll the five-year license revocation period under the specific language of section 322.3(12). Carreras sought further review on the license revocation issue. The DOT resisted, and we granted further review.

**II. Standard of Review.**

"Iowa Code section 17A.19 governs judicial review of this agency action." *Good v. Iowa Dep't of Hum. Servs.*, 924 N.W.2d 853, 860 (Iowa 2019) (quoting *Cox v. Iowa Dep't of Hum. Servs.*, 920 N.W.2d 545, 549 (Iowa 2018)). "We apply the standards set forth in Iowa Code chapter 17A in our judicial review of agency decision-making to determine whether our conclusion is the same as the district court." *Id.* (quoting *Brewer-Strong v. HNI Corp.*, 913 N.W.2d 235, 242 (Iowa 2018)). "We affirm the district court decision when we reach the same

conclusion." *Id.* (quoting *Brewer-Strong*, 913 N.W.2d at 242). However, we may reverse the agency action if it "prejudiced the substantial rights of the petitioner and if the agency action falls within one of the criteria listed in section 17A.19(10)(*a*) through (*n*)." *Id.* (quoting *Brewer-Strong*, 913 N.W.2d at 242).

On appeal, Carreras contends the agency action violated sections 17A.19(10)(*b*) and (10)(*c*). Iowa Code §§ 17A.19(10)(*b*) (authorizing relief if the agency action is "in violation of any provision of law"), (*c*) (authorizing relief if the agency action is "[b]ased upon an erroneous interpretation of a provision of law whose interpretation has not clearly been vested by a provision of law in the discretion of the agency"). Thus, we review the statutory interpretation at issue for errors of law but give deference to the agency's application of the law to the facts. *See Neal v. Annett Holdings, Inc.*, 814 N.W.2d 512, 518 (Iowa 2012); *Drake Univ. v. Davis*, 769 N.W.2d 176, 183 (Iowa 2009).

Carreras also contends the agency's action violated section 17A.19(10)(*f*). Iowa Code § 17A.19(10)(*f*) (authorizing relief if the agency action is "[b]ased upon a determination of fact clearly vested by a provision of law in the discretion of the agency that is not supported by substantial evidence in the record before the court when that record is viewed as a whole"). "When reviewing a finding of fact for substantial evidence, we judge the finding 'in light of all the relevant evidence in the record cited by any party that detracts from that finding as well as all of the relevant evidence in the record cited by any party that supports it.' " *Cedar Rapids Cmty. Sch. Dist. v. Pease*, 807 N.W.2d 839, 845 (Iowa 2011) (quoting Iowa Code § 17A.19(10)(*f*)(3)). "Our task, therefore, is not to determine whether the

evidence supports a different finding; rather, our task is to determine whether substantial evidence, viewing the record as a whole, supports the findings actually made." *Id.*

**III. Analysis.**

Iowa Code chapter 322 regulates motor vehicle manufacturers, distributors, wholesalers, and dealers. Parties who are interested in selling motor vehicles in Iowa must acquire a motor vehicle dealer license with an application through the DOT. *Id.* §§ 322.4 (describing the application for a motor vehicle dealer license), .6 (listing the grounds for denial of a motor vehicle dealer license), .7 (describing the contents of a motor vehicle dealer license). "The [DOT] may revoke or suspend the license of a retail motor vehicle dealer if, after notice and hearing by the department of inspections and appeals, it finds that the licensee has been guilty of an act which would be a ground for the denial of a license under section 322.6." *Id.* § 322.9(1); *see also* Iowa Admin. Code r. 761—425.62(1) (describing how the DOT can suspend or revoke a license if the licensee fails to comply with Iowa Code chapter 322). A licensee may seek judicial review of the DOT's action in accordance with Iowa Code chapter 17A when the DOT suspends or revokes a motor vehicle dealer's license. Iowa Code § 322.10.

One of the grounds for license revocation or suspension under section 322.6 is when the licensee "has not complied with the provisions of this chapter." *Id.* § 322.6(1)(*b*). Iowa Code section 322.3 provides a list of "[p]rohibited acts." *Id.* § 322.3. The DOT specifically revoked Carreras's license under Iowa Code section 322.3(12) which states in full:

> A person who has been convicted of a fraudulent practice, has been convicted of three or more violations of section 321.92, subsection 2, or section 321.99, has been convicted of three or more violations of subsection 16 of this section in the previous three-year period, *or has been convicted of any other indictable offense in connection with selling or other activity relating to motor vehicles, in this state or any other state, shall not for a period of five years from the date of conviction* be an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer or represent themselves as an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer.

*Id.* § 322.3(12) (emphasis added).[2]

**A. "In Connection With."** Our first question is whether Carreras's structuring conviction is an "other indictable offense *in connection with* selling or other activity relating to motor vehicles" under section 322.3(12). *Id.* (emphasis added). The decisions below and the parties' briefs detail a wide range of possible interpretations.

The ALJ rescinded the DOT's license revocation, defining the phrase "in connection with" as "in reference to" based on the phrase's common meaning within the context of section 322.3(12). The ALJ determined the structuring offense was not "in reference to" motor vehicle sales because a "structuring conviction does not concern itself with the source of the unlawfully deposited money." The reviewing officer reversed the ALJ's proposed decision and interpreted section 322.3(12) broadly for the purpose of public protection. *See id.* § 322.15(1) (providing that "[a]ll provisions of this chapter shall be liberally

---

[2]Iowa Code section 322.6(1)(*d*) contains a similar ground for denial or revocation of a license: "The applicant has been convicted of a fraudulent practice or any indictable offense in connection with selling or other activity relating to motor vehicles." Notably absent in section 322.6(1)(*d*) is a revocation period or a start date as compared to section 322.3(12).

construed"). In doing so, the reviewing officer concluded a "nexus" existed between the structuring offense and motor vehicle transactions at Los Primos to satisfy section 322.3(12).

On judicial review, the district court agreed with the reviewing officer. The district court explained that "in connection with" only required a "relation and nexus" and noted that "but for" the sale of motor vehicles, the structuring offense would not have occurred. It also concluded this interpretation was consistent with chapter 322's intention to protect the public. The court of appeals also applied a similar "relation or nexus" test to determine that structuring deposits into separate dealership bank accounts is an "indictable offense in connection with selling or other activity relating to motor vehicles." Likewise, it applied the *ejusdem generis* doctrine to section 322.3(12) to conclude that "indictable offense" included offenses with an "evasive nature" which included structuring. The court of appeals also believed these interpretations were consistent with chapter 322's public-protection purpose.

On appeal, Carreras claims that the ALJ's interpretation of "in connection with" was correct. Alternatively, Carreras suggests that we interpret "in connection with" to require the underlying offense to "embolden or facilitate" the sale or other activity relating to motor vehicles, analogous to an interpretation of a federal sentencing enhancement where "the [defendant] . . . used or possessed any firearm or ammunition *in connection with* another felony offense." U.S.S.G. § 2K2.1(b)(6)(B) (2019) (emphasis added); *see, e.g.*, *United States v. Jeffries*, 587 F.3d 690, 694–95 (5th Cir. 2009) (requiring that the firearm facilitate or

potentially facilitate the felony). The DOT supports the interpretations from the reviewing officer, district court, and the court of appeals.

"The first step in our statutory interpretation analysis is to determine whether the statute is ambiguous." *State v. Zacarias*, 958 N.W.2d 573, 581 (Iowa 2021) (quoting *State v. Ross*, 941 N.W.2d 341, 346 (Iowa 2020)). "Our inquiry ends with the plain language if the statute is unambiguous." *Id.* A statute is ambiguous " 'if reasonable minds could differ or be uncertain as to the meaning of the statute' based on the context of the statute." *Id.* (quoting *Ross*, 941 N.W.2d at 346). If a statute is ambiguous, we "rely on principles of statutory construction to resolve the ambiguity." *Id.* (quoting *Ross*, 941 N.W.2d at 346). The differing interpretations throughout these proceedings show reasonable minds disagree as to the interpretation of section 322.3(12). Thus, we turn to our tools of statutory construction to help determine the meaning of "in connection with" in the context of Iowa Code section 322.2(13).

The legislature did not define "in connection with" in this section. If the legislature has not provided a definition, we may refer "to prior decisions of this court and others, similar statutes, dictionary definitions, and common usage." *Good*, 924 N.W.2d at 860 (quoting *State v. Romer*, 832 N.W.2d 169, 179 (Iowa 2013)). "[O]ur goal 'is to ascertain legislative intent in order, if possible, to give it effect.' " *State v. Coleman*, 907 N.W.2d 124, 136 (Iowa 2018) (quoting *State v. Finders*, 743 N.W.2d 546, 548 (Iowa 2008)). "To ascertain legislative intent, we examine 'the language used, the purpose of the statute, the policies and remedies implicated, and the consequences resulting from different interpretations.' "

*Albaugh v. The Reserve*, 930 N.W.2d 676, 683 (Iowa 2019) (quoting *Des Moines Flying Serv., Inc. v. Aerial Servs., Inc.*, 880 N.W.2d 212, 220 (Iowa 2016)). "It is not our role to 'change the meaning of a statute.' " *Zacarias*, 958 N.W.2d at 582 (quoting *Ross*, 941 N.W.2d at 347).

We have generally stated that chapter 322's purpose is to protect the public. *See State v. Miner*, 331 N.W.2d 683, 687 (Iowa 1983); *State v. Lindsey*, 165 N.W.2d 807, 808 (Iowa 1969). Section 322.15 illustrates two objectives on how chapter 322 is designed to do so. The first objective is to deter "the practice or commission of fraud in the sale, barter, or disposition of motor vehicles at retail." Iowa Code § 322.15(1). The second objective is that *"irresponsible, unreliable, or dishonest persons* may be prevented from engaging in the business of selling, bartering, or otherwise dealing in motor vehicles." *Id.* (emphasis added). Essentially, the first objective is aimed at preventing certain actions during motor vehicle sales, while the other is aimed at preventing certain individuals from selling motor vehicles. Both of these objectives are entitled to the benefit of liberal construction. *Id.*

"[T]his court [has] noted that 'in connection with' is a broad term that conveys a legislative intent to cover a wide range of situations." *Adams v. City of Des Moines*, 629 N.W.2d 367, 370 (Iowa 2001); *see also Seymour v. Chi. & Nw. Ry. Co.*, 124 N.W.2d 157, 161 (Iowa 1963) ("The words 'in connection with' are broad, and have been so construed by the courts."); *Stromberg Hatchery v. Iowa Emp. Sec. Comm'n*, 33 N.W.2d 498, 500–02 (Iowa 1948) (interpreting the phrase "in connection with" liberally). A couple of dictionaries define the specific phrase

"in connection with" as "in relation to (something)." *In connection with, Merriam-Webster*, https://www.merriam-webster.com/dictionary/in%20connection%20with (last visited June 14, 2022); *see also In connection with something, Macmillan Dictionary*, https://www.macmillandictionary.com/us/dictionary/american/in-connection-with-something (last visited June 14, 2022) ("relating to something"). "We note that the legislature did not specify the level of 'connection' required by including 'intrinsically' or some other modifier." *In re Jean-Guy's Used Cars & Parts, Inc.*, 977 A.2d 479, 483 (N.H. 2009); *see, e.g.*, Iowa Code § 543D.17(1)(*c*) ("A conviction . . . of a crime which is *substantially* related to the qualifications, functions, and duties of a person developing real estate appraisals and communicating real estate appraisals to others." (emphasis added)).

These dictionary definitions are consistent with our recent caselaw defining "in connection with" as "related to, linked to, or associated with." *State ex rel. Miller v. Cutty's Des Moines Camping Club, Inc.*, 694 N.W.2d 518, 526 (Iowa 2005) (quoting *Metro. Prop. & Cas. Ins. v. Fitchburg Mut. Ins.*, 793 N.E.2d 1252, 1255 (Mass. App. Ct. 2003); *see Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 193 (Iowa 2016) (adopting the definition of statutory unemployment benefits outlined in *Cutty's*). "[R]elated to, linked to, or associated with" only requires a "relation or nexus." *Cutty's*, 694 N.W.2d 518 at 526; *see also Irving*, 883 N.W.2d at 193.

This definition is also consistent with other Iowa licensing statutes that authorize a license revocation when the conviction is "related to" the profession or some certain aspect of it. *See, e.g.*, Iowa Code § 151.9(5) (authorizing

revocation of a chiropractor's license for a "[c]onviction of a felony *related to* the profession or occupation of the licensee" (emphasis added));[3] *id.* § 156.15(2)(*a*) (authorizing revocation of a funeral establishment or cremation establishment license based on "any crime *related to* the practice of mortuary science or implicating the establishment's ability to safely perform mortuary science services" (emphasis added)). However, Carreras asks us to construe the phrase "in connection with" more narrowly because the legislature could have used "related to" as it did for license revocation statutes under similar grounds. We are persuaded by the authority that "related to" and "in connection with" should be defined similarly when analyzing section 322.3(12).

Carreras also argued that a different definition is required for "relating to" and "in connection with" because they are both used in the same sentence in section 322.3(12). Had the language read "indictable offense relating to or in connection with selling or other activity," we might be inclined to define the phrases differently due to the disjunctive "or." *Bates v. United Sec. Ins.*, 163 N.W.2d 390, 398 (Iowa 1968) ("As used in its ordinary sense the word 'or' marks an alter[n]ative indicating the various members of the sentence which it connects are to be taken separately."). But in this context, we believe these phrases to be interchangeable.

To say that Carreras was "convicted of structuring in connection with selling motor vehicles" aligns with our precedents and his actions are precisely

---

[3]Iowa Code section 151.9(5) was later struck from the code in 2020. 2020 Iowa Acts ch. 1103, § 16 (codified at Iowa Code § 151.9 (2021)).

within chapter 322's objective to protect the public. Just like in *Cutty's*, "the connection between the sale [of motor vehicles] and the [structuring offense] is plain." 694 N.W.2d 518 at 528. We agree with the district court and court of appeals that the sale of motor vehicles was the sole mechanism for the structuring offense. The plea deal and the ALJ's facts both show a clear three-year pattern of how deposits would be structured directly after a motor vehicle sale. The structuring offense committed on September 16 and 17 followed this exact pattern. The fact that business deposit accounts were used only amplifies the notion that a relation or nexus existed between the sale of motor vehicles and the structuring offense.

Even if we agreed with Carreras that the connection between structuring and the sale of motor vehicles is too attenuated, deposits into a business account constitute "other activity" relating to motor vehicles. Iowa Code § 322.3(12). An "activity" is defined as "[t]he collective acts of one person or of two or more people engaged in a common enterprise." *Activity*, *Black's Law Dictionary* (11th ed. 2019); *see also Commercial Activity*, *Black's Law Dictionary* (11th ed. 2019) ("An activity, such as operating a business, conducted to make a profit."). Because depositing funds from the sale of motor vehicles into business accounts constitutes part of the motor vehicle business operations, it qualifies as "other activity" related to motor vehicles. After all, the sums deposited in violation of the structuring law were comprised of the proceeds of vehicle sales.

Moreover, our conclusion that a structuring conviction has a sufficient relation or nexus to either motor vehicle sales or deposits into a licensee's

business account to be considered an "indictable offense in connection with selling or other activity relating to motor vehicles" is consistent with the statute's purpose. Our decision in *Cutty's* provides a comparable illustration. There, we examined whether an unfair practice in connection with the sale of any merchandise under the Iowa Consumer Fraud Act included conduct occurring after the sale. *Cutty's*, 694 N.W.2d at 525–29 (examining whether an aggressive collection campaign for nonpayment of dues was in connection with the sale of undivided interests of campground property). In the absence of a legislative definition of "in connection with," we determined that there only needed to be "some relation or nexus between" the unfair practice and the sale of merchandise. *Id.* at 526. This broad definition aligned with the text and purpose of the Iowa Consumer Fraud Act to bar unfair practices that can occur after the sale. *Id.* at 525–26.

Similar to the Iowa Consumer Fraud Act's text and purpose, section 322.2(12)'s text and purpose mandate a broad reading of "in connection with." Like an "unfair practice," an "indictable offense" includes a broader range of conduct than what is included in a "fraudulent practice." *See Cutty's*, 694 N.W.2d at 527 (emphasizing the difference between an unfair practice and fraudulent practice). *Compare* Iowa Code § 801.4(8) (" 'Indictable offense' means an offense other than a simple misdemeanor."), *with id.* § 714.8 (defining "fraudulent practice"). The textual development of section 322.3(12) supports this comparison. From its inception in 1999 up until 2009, section 322.3(12) allowed a license revocation or suspension only if "[a] person [was] convicted of

a fraudulent practice in connection with selling, bartering, or otherwise dealing in motor vehicles." Iowa Code § 322.3(12) (2009). In 2009, section 322.3(12) was amended to allow a license revocation or suspension if "[a] person [was] convicted of a fraudulent practice *or any other indictable offense* in connection with selling *or other activity relating to* motor vehicles." 2009 Iowa Acts ch. 130, § 35 (codified as amended at Iowa Code § 322.3(12) (2011)) (emphasis added). The inclusion of "other activity relating to" expanded the reach of section 322.3(12) beyond the immediate transaction of motor vehicles, particularly when considering whether the underlying indictable offense is within section 322.12's scope. *Bates*, 163 N.W.2d at 398.

Our interpretation is supported by reading the statute as a whole. Section 322.3 provides two other prohibited acts that involve specifically using "arising from" instead of "in connection with" language. Iowa Code §§ 322.3(4) (2019) ("A person who is engaged in the business of selling at retail motor vehicles shall not enter into any contract . . . with any manufacturer or distributor of any such motor vehicles that the person will sell, assign, or transfer any retail installment contracts *arising from* the retail installment sale of such motor vehicles . . . ." (emphasis added)), (5) ("A manufacturer or distributor of motor vehicles or any agent or representative . . . shall not terminate, threaten to terminate, or fail to renew any contract . . . because the motor vehicle dealer failed to sell, assign, or transfer any retail installment contract *arising from* the retail sale of such motor vehicles . . . ." (emphasis added)). These provisions show that the legislature

could have limited license revocations to indictable offenses *arising from* selling or other activity related to motor vehicles but chose not to.

Carreras lastly contends that this interpretation leads to absurd results. "It is universally accepted that where statutory terms are ambiguous, courts should interpret the statute in a reasonable fashion to avoid absurd results." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 534 (Iowa 2017). As explained, chapter 322 effectuates its broad public protection purpose by preventing certain individuals from selling motor vehicles and section 322.3(12) contains sweeping language to capture a wide range of offenses involving motor vehicles consistent with that purpose. Thus, we are hesitant to apply the absurd results doctrine in such a situation, particularly when the legislature has shown that it can modify "in connection with" or "relating to" to require a more substantial relation or nexus between a crime and relevant subject matter in licensing statutes. Perhaps, at some point, a relation or nexus between an indictable offense and the selling or other activity relating to motor vehicles may become too attenuated to justify a license revocation. However, we are not presented with the outer bounds of this issue and need not determine those bounds today.

In conclusion, we believe the license revocation is justified. The structuring conviction has a sufficient relation or nexus to motor vehicle sales and the structuring conviction has a sufficient relation or nexus to deposits into motor vehicle business accounts. Either of these nexuses satisfies the requirements of section 322.3(12).

**B. Substantial Evidence.** Next, we address whether the DOT had substantial evidence to revoke Carreras's motor vehicle dealer license. The district court extensively cited the reviewing officer's decision in concluding there was substantial support for the license revocation. On appeal, Carreras argues there was no support for the assertion that a structuring conviction was "inherently fraudulent and deceptive." The DOT contends the structuring conviction was "inherently fraudulent and deceptive" but "ultimately . . . Iowa Code section 322.3(12) does not require a finding of fraud or deception." Here, the plea agreement provides substantial evidence that Carreras violated section 322.3(12). The plea agreement showed that Carreras pleaded guilty to structuring, which the agency recognized as an indictable offense. It also showed that the money for the structuring conviction came from the motor vehicle sales and in turn was deposited into the business vehicle accounts. Therefore, substantial evidence existed for the license revocation under section 322.3(12).

**C. Revocation Period.** Finally, we must decide on what date the revocation period started and the legal effect of the stay. A person convicted of one of the prohibited acts under section 322.3(12)

> shall not for *a period of five years from the date of conviction* be an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer or represent themselves as an owner, salesperson, employee, officer of a corporation, or representative of a licensed motor vehicle dealer.

Iowa Code § 322.3(12) (emphasis added). Subsection 12 is unique in that it is the only prohibited act under section 322.3 or ground for license revocation

under section 322.6 that contains a specific timeframe for the license revocation and a specific start date of the license revocation. *See generally id.* §§ 322.3, .6.

A review of the record shows that DOT granted a stay of the license revocation through the administrative appeal proceedings. Throughout the judicial review proceedings, Carreras successfully moved for stays of the license revocation under Iowa Code section 17A.19(5). *Id.* § 17A.19(5) (describing the procedures for an agency and district court to grant a stay on judicial review); *see id.* § 322.10 ("Judicial review of actions of the department may be sought in accordance with the terms of the Iowa administrative procedure Act, chapter 17A."). On judicial review, Carreras claims that the five-year revocation period commenced on the date of conviction and expired five years later. Furthermore, he claims the revocation period cannot be tolled. The DOT claims that the revocation period should be tolled, otherwise licensees could use stays during the appeal process to prevent a license revocation from ever taking place.

Section 322.2 does not define "convicted" or "conviction." *See id.* § 322.2. However, chapter 322 shows that the legislature knows how to delay collateral consequences between the date of conviction and a final judgment. *Compare id.* § 322.3(12), *with id.* § 322.6(1)(*i*) (allowing license revocation when "[t]he applicant has been determined in a *final judgment* of a court of competent jurisdiction to have violated section 714.16 [Consumer Frauds] in connection with selling or other activity relating to motor vehicles" (emphasis added)). We conclude that the revocation period begins from the date of conviction.

In chapter 322 license revocation proceedings, the DOT only has the power to revoke a license "if, after notice and hearing by the department of inspections and appeals, it finds that the licensee has been guilty of an act which would be a ground for the denial of a license." *Id.* § 322.9; *see also id.* § 17A.18(3) (requiring agency notice and an opportunity for an evidentiary hearing before a license can be suspended). This makes sense because the DOT still must prove the underlying conviction is "in connection with selling or other activity relating to motor vehicles." *Id.* § 322.3(12). The collateral consequence of a license revocation cannot occur until after the administrative hearing and appeals process is exhausted or waived. Because of these parameters, the DOT will rarely be in a position to revoke a license immediately from the date of conviction.

The parties contest whether the revocation period should have been tolled during the pendency of Carreras's appeal. The parties have misframed the issue. The issue is not whether the revocation period was tolled; instead, it is the legal effect of the stay order. The DOT did not notify Carreras of the revocation until April 2, 2019—over two months after the sentencing of the federal structuring conviction that occurred on January 24. The DOT then placed the license revocation on an "automatic stay order" after Carreras requested a contested case hearing on April 16. In this context, the stay delays the enforcement of the license revocation. *Stay, Black's Law Dictionary* (11th ed. 2019) ("The postponement or halting of a proceeding, judgement, or the like."). "A stay order does not affect the merits of the controversy and is to maintain the status quo until a determination can be made on the merits. It is intended only to delay the

enforcement of the action stayed, not render it ineffective." *Hanna v. State Liquor Control Comm'n*, 179 N.W.2d 374, 376 (Iowa 1970); *see Gothard v. Spradling*, 586 S.W.2d 443, 447 (Mo. Ct. App. 1979) (en banc) ("The stay or restraining order did not eliminate the revocation, but merely delayed it."); *Rhoades v. State Real Est. Comm'n*, 45 N.W.2d 628, 629 (Neb. 1951) ("[T]he time of the commencement of the period of suspension of the license of appellee would have been automatically advanced until the judgment providing for the suspension became final and enforceable."). "If the status quo is to be truly preserved, the license holder must be permitted to continue [the] business until the merits . . . have been determined, without depriving the [department] of its right to impose punishment" if the merits are resolved favorably to the department. *Hanna*, 179 N.W.2d at 376. Otherwise, "[t]he granting of the stay order might allow a violator to escape punishment and the refusal to grant a stay order might subject an innocent party to undeserved punishment." *Id.*

We recognized the impact of stays in the context of driver's license revocations in *Shriver v. Iowa Department of Transportation*, 430 N.W.2d 921 (Iowa 1988). "[A]s long as the person has a . . . license . . . under an administrative or judicial stay order, there is no revocation." *Id.* at 923. If we accepted Carreras's position, "it would behoove a person similarly situated to seek stays and continuances through the whole administrative and court review process." *Id.* at 924. "Such tactics would result in frustration of the primary purpose" of chapter 322, which is to prevent certain individuals from selling motor vehicles. *Id.* If the license revocation could only run from the date of

conviction while stays were allowed throughout the administrative and judicial review process with the five-year clock still running, it would effectively shorten section 322.3(12)'s revocation period to five years minus the months and years spent challenging the revocation. *Id.* Indeed, in this case, over three and a half years have already transpired since Carreras's conviction. The stay merely delayed the enforcement of the judgment.

In conclusion, the five-year revocation period began on the date of conviction: September 6, 2018.[4] Under the plain language of the statute, the revocation period would have expired on September 6, 2023. However, the revocation period was stopped pending Carreras's challenge to the revocation order through administrative and judicial stays. The revocation period shall be extended by the duration of the stay. We remand this matter to the district court with instructions to remand this matter to the agency for the entry of a revocation order consistent with this opinion.

**IV. Conclusion.**

For the foregoing reasons, we affirm in part and vacate in part the court of appeals opinion.

**DECISION OF COURT OF APPEALS AFFIRMED IN PART AND VACATED IN PART; DISTRICT COURT JUDGMENT AFFIRMED IN PART, REVERSED IN PART, AND CASE REMANDED WITH INSTRUCTIONS.**

---

[4]Under federal law, "the date of the plea . . . determines the date of conviction, not the entering of a final judgment." *United States v. Garduno-Trejo*, 395 F. App'x 321, 323 (8th Cir. 2010).

Waterman and McDonald, JJ., join this opinion, Oxley and Appel, JJ., join this opinion as to parts II and III.C, and McDermott, J., joins this opinion as to parts II and III.A–B. Oxley, J., files an opinion concurring in part and dissenting in part, in which Appel, J., joins. McDermott, J., files an opinion concurring in part and dissenting in part. Mansfield, J., takes no part.

#20–0963, *Carreras v. Iowa Dep't of Transp.*

**OXLEY, Justice (concurring in part and dissenting in part).**

Defining amorphous phrases like "in connection with" is not an easy task, leaving the majority to conclude that "the connection between the sale [of motor vehicles] and the [structuring offense] is plain." A bit of "we know it when we see it" reasoning. It is not so plain to me. The majority essentially reads "in connection with" as a but-for relationship—but for selling vehicles, Carreras would not have had cash to structure into transactions less than $10,000 and deposit into his business accounts. Our caselaw construing the phrase "in connection with" requires a closer relationship than "but for," and I therefore respectfully dissent from the majority's opinion in parts III.A and B, affirming the revocation of Carreras's license.

I agree with the majority's construction of Iowa Code section 322.3(12) (2019) and the legal effect of the stay in this case. I therefore join part III.C of the majority opinion to the extent it addresses the purely legal effect of the stay on the calculation of the five-year revocation period under section 322.3(12).

I.

I agree that "in connection with" signals a broad relationship, especially in the context of a regulatory statute that is mandated to be liberally applied. I also agree it is broader than "arising out of" or "arising from." But there are even broader relationships than "in connection with," such as the one used in Ohio's license revocation statute that allows revocation of a dealer's license for a conviction that "*in any way relates* to the selling, taxing, licensing, or regulation

of sales of motor vehicles." *Geisert v. Ohio Motor Vehicle Dealers Bd.*, 626 N.E.2d 960, 963 (Ohio Ct. App. 1993) (emphasis added) (quoting Ohio Rev. Code § 4517.33). "In any way relates" may reach but-for causation, but "in connection with" does not.

The revocation provision in Iowa Code section 322.3(12) sets up a relationship between an action—being convicted of an indictable offense—and an object, or really two alternative objects—either "selling" vehicles or engaging in "other activity relating to motor vehicles." It also prescribes the required relationship between the action and the object—a person must have been convicted "in connection with" one of the two objects. The district court applied a but-for test and concluded that Carreras was convicted of structuring transactions "in connection with" selling cars; without selling cars, Carreras would not have had cash to structure. Although the majority doesn't say it is applying a but-for standard, it essentially does so by allowing any connection or link to supply the requisite relationship.

"In connection with" is not so broad as to be a mere but-for causation standard. *See Gavin v. AT&T Corp.*, 464 F.3d 634, 639 (7th Cir. 2006) ("[A] mere 'but for' cause linking a securities transaction (here, the merger of MediaOne into AT & T) to a subsequent injury (concealment of the option to receive the Standard Election without paying any fee) does not make the injury one suffered 'in connection with the purchase or sale of securities.' Otherwise [the Securities Litigation Uniform Standards Act of 1998] would apply to a class action by shareholders who suffered paper cuts when they opened the letters informing

them of their rights under the merger." (citing 15 U.S.C. § 77p(b))). But reading "in connection with" to mean any connection or any link, and then applying those terms broadly, leads to a but-for standard. There should be a meaningful way to distinguish between a but-for standard and the meaning of "in connection with."

*Miller v. Cutty's Des Moines Camping Club, Inc.* provided multiple definitions for "in connection with." 694 N.W.2d 518, 525–28 (Iowa 2005). We said the phrase is commonly defined as "related to, linked to, or associated with." *Id.* at 526 (quoting *Metro. Prop. & Cas. Ins. v. Fitchburg Mut. Ins.*, 793 N.E.2d 1252, 1255 (Mass. App. Ct. 2003)). Yet we also said "in connection with" means a "substantive connection" or a "causal link." *Id.* (quoting *Filetech S.A. v. France Telecom S.A.*, 157 F.3d 922, 930 (2d Cir. 1998) (noting that under the Foreign Sovereign Immunities Act it is "well settled" an act is made "in connection" with commercial activity if there is a "substantive connection" or "causal link" between the two (quoting *Hanil Bank v. PT. Bank Negara Indonesia* (*Persero*), 148 F.3d 127, 131 (2d Cir. 1998)), *overruled on other grounds* by *Lotes Co. v. Hon Hai Precision Indus. Co.*, 753 F.3d 395 (2d Cir. 2014))). This latter definition is consistent with the dictionary definition of "nexus" as "[a] connection or link, *often a causal one*," which we also cited in *Cutty's. Id.* (alteration in original) (emphasis added) (quoting *Nexus, Black's Law Dictionary* (8th ed. 2004)).

We didn't have to be too specific about the level of connection in *Cutty's* because we were only deciding whether "in connection with" had a temporal limit that precluded post-sale activities from being found to be "in connection with" the prior sale. *See id.* ("[N]othing in the legislature's use of 'in connection with' in

the [Iowa Consumer Fraud] Act enunciates a bright-line temporal rule. We will not judicially superinscribe one."). In *Cutty's*, we held the phrase "in connection with the sale of merchandise" included post-sale efforts to require previous purchasers of an undivided 1/3000 interest in property used for camping to pay annual dues as part of the Declaration of Restrictions attached to the purchased interest. *Id.* at 520–21. Even though we didn't expressly define it that way, we found a "substantive connection" because the terms of the sale were the basis for the post-sale activity of attempting to collect annual dues from the purchasers. *Id.* at 528–29 (concluding the post-sale collection activities were taken in connection with the sale where "[a]ll the Club's alleged rights vested at the time of the sale and continue to this day on account of that transaction" and citing *Hines v. Evergreen Cemetery Ass'n*, 865 S.W.2d 266, 269 (Tex. App. 1993) (finding Texas statute regulating deceptive trade practices applies to post-sale conduct when sale gives rise to ongoing rights and obligations in the future)). *Cutty's* and *Hines* both provide examples of not just any connection, but substantive connections.

We applied a similar standard in *Adams v. City of Des Moines*, where we said that a firefighter's directions to move a truck that was touching power lines was made "in connection with an emergency response" because even though the emergency was over, the response was not. 629 N.W.2d 367, 370–71 (Iowa 2001) (quoting Iowa Code § 670.4(11) (1997)). We explained that the firefighter's directions were an action taken as "*part of* the emergency response," even if the emergency itself was over. *Id.* at 371 (emphasis added). That the firefighter's

direction was "part of" the emergency response is another way of saying his directions had a substantive connection to the emergency response. It was not just a but-for connection.

Since *Cutty's*, we have been a bit more specific. We cited *Cutty's* to define "in connection with" as requiring "a causal connection," not just any connection or a conceivable connection, between an employee's misconduct and her disqualification for unemployment benefits in *Irving v. Emp. Appeal Bd.*, 883 N.W.2d 179, 193 (Iowa 2016). Under Iowa Code section 96.5(2), "If the department finds that the individual has been discharged for misconduct in connection with the individual's employment[,] . . . [t]he individual shall be disqualified for [unemployment] benefits . . . ." *Id.* at 188 (alterations and omissions in original) (quoting Iowa Code § 96.5(2) (2013)). The Unemployment Appeal Board argued an employee's misconduct with respect to one employer disqualified the employee from receiving unemployment benefits from another employer under a theory of "spill-over" disqualification. *Id.* at 184. We rejected the agency's argument as "ignor[ing] the legislature's required nexus" found in "[t]he introductory language of Iowa Code section 96.5(2)[, which] states that disqualification for misconduct must be 'in connection with the individual's employment.' " *Id.* at 193.

In my view, our caselaw establishes that "in connection with" requires a substantive or causal connection, not a mere but-for connection. Thus, Carreras's license can only be revoked if his structuring conviction has a

substantive or causal connection to either selling vehicles or engaging in some other activity relating to vehicles.

## II.

Carreras pleaded guilty to structuring financial transactions, 31 U.S.C. § 5324(a)(1), (3), which is a regulatory crime that criminalizes conduct because it is prohibited, not because it is morally or inherently wrong, *see United States v. $9,980 Seized from Cmty. Bank & Tr. Acct. No. 067–0022713*, 859 F. Supp. 2d 1281, 1284 (M.D. Fla. 2012). The source of the cash and the reason Carreras didn't want the bank to report the transactions are irrelevant to the structuring conviction. *See United States v. MacPherson*, 424 F.3d 183, 193 (2d Cir. 2005) ("Section 5324 makes no reference to the source of the monies at issue or to the reason why a person seeks to avoid [Currency Transaction Report] filing. Its singular focus is on the *method* employed to evade that filing requirement, *i.e.*, structuring."); *United States v. Gibbons*, 968 F.2d 639, 645 (8th Cir. 1992) ("It is immaterial that Gibbons' apparent purpose for [structuring transactions] was to prevent his ex-wife rather than the government from tracing the funds. The focus of the statute is on the structuring person's conduct, not on the reason why he did not want the transaction report filed."); *$9,980 Seized from Cmty. Bank & Tr.*, 859 F. Supp. 2d at 1283 ("The Court recognizes Kaiser may have been motivated primarily by her desire to hide her possession of a large sum of money from her former husband, but she chose to do so by structuring her transactions in such a way as to prevent the Bank from reporting her deposits to the Government as required by law. That is the essence of the anti-structuring statute."). If the

source of the funds is immaterial to a structuring conviction, it is difficult to see how Carreras was convicted of structuring transactions "in connection with selling" cars. The only connection is, as the district court concluded, a but-for connection.

The majority hedges a bit by also relying on "other activity relating to motor vehicles," which it identifies as depositing the funds into Carreras's "motor vehicle business accounts." Here, the connection is even more attenuated, an attenuation implicit in the majority's conclusion that "[b]ecause depositing funds from the sale of motor vehicles into business accounts constitutes part of the *motor vehicle business operations*, it qualifies as 'other activity' relat[ing] to motor vehicles." (Emphasis added.) But the "other activity" must be relating to motor vehicles, not to "motor vehicle business operations." *See* Iowa Code § 322.3(12). The license revocation schemes for other professions cited by the majority highlight this difference. A chiropractor's license may be revoked for a "conviction of a felony related to *the profession or occupation* of the licensee," *see id.* § 151.9(5) (emphasis added), and a mortician's license may be revoked based on "any crime related to the *practice of mortuary science* or implicating the establishment's ability to safely perform mortuary science services," *id.* § 156.15(2)(*a*) (emphasis added). Here, however, the general assembly did not make convictions in connection with a vehicle dealer's business a prohibited act that would result in revocation of his dealer's license, only convictions in connection with activities relating to motor vehicles. The majority has to rewrite the statute to make Carreras's conviction fit.

The majority's interpretation of Iowa Code section 322.3(12) to apply to Carreras's structuring conviction minimizes the requisite relationship by relying more on the purposes behind chapter 322 than the language of the statute. That the provisions of chapter 322 are to "be liberally construed" so that "irresponsible, unreliable, or dishonest persons may be prevented from engaging in the business of selling, bartering, or otherwise dealing in motor vehicles," *id.* § 322.15(1), does not mean that a dealer's license can be revoked for any conviction involving irresponsible, unreliable, or dishonest conduct in connection with his dealership business. Even a liberal construction of a statute must be based on the language of the statute, not its stated purpose. *See Xenia Rural Water Dist. v. Vegors*, 786 N.W.2d 250, 257 (Iowa 2010) (interpreting the workers' compensation statute, which is applied "broadly and liberally" to further its "humanitarian objective," and recognizing that even though "[t]he statute's 'beneficent purpose is not to be defeated by reading something into it which is not there, or by a narrow and strained construction,' " this court is still "bound by the requirements of the statute" (quoting *Cedar Rapids Cmty. Sch. v. Cady*, 278 N.W.2d 298, 299 (Iowa 1979) (en banc))); *see also Norman Gershman's Things To Wear, Inc. v. Mercedes-Benz of N. Am., Inc.*, 558 A.2d 1066, 1074 (Del. Super. Ct. 1989) ("Although Gershman's correctly notes that the provisions of the Consumer Fraud Act are to be liberally construed, this Court cannot ignore the clear language of the statute which restricts its application to deceptive practices 'in connection with the sale or advertisement' of the merchandise." (quoting Del. Code tit. 6, § 2513(a) (1989))). The purpose behind the statute does

not allow the majority to ignore the statute's actual language. The general assembly limited revocation of a dealer's license to convictions in connection with specific types of activities, and it is not our place to go beyond the fair import of the statute under the guise of liberal construction.

III.

Carreras was convicted of structuring transactions in connection with splitting large sums of cash into increments less than $10,000 before depositing them into his bank accounts. There is no substantive or causal connection between those actions and selling vehicles or engaging in any other activity relating to motor vehicles. I would reverse Carreras's license revocation.

Appel, J., joins this concurrence in part and dissent in part.

**McDERMOTT, Justice (concurring in part and dissenting in part).**

I.

I concur in the court's opinion that the phrase "in connection with" in Iowa Code section 322.3(12) (2019) applies to the criminal offense ("structuring" bank deposits) under which the government convicted Jesus Carreras. But I would reach that result based on the plain language of section 322.3(12) and without attempting to ascertain some chimerical legislative "intent" or "purpose" from beyond the text of the statute as the majority does, for reasons I elaborated in *State v. Davison*, 973 N.W.2d 276, 292–94 (Iowa 2022) (McDermott, J., concurring specially), and *State v. Cungtion*, 969 N.W.2d 501, 513–14 (Iowa 2022) (McDermott, J., concurring specially).

And because I don't believe that the language of the statute is ambiguous, I wouldn't place any thumbs on the scale in our interpretive efforts in favor of the State by giving the statute a "liberal construction." Our duty in construing a statute, "even with the instruction to construe it broadly, requires first that we provide 'a fair interpretation as opposed to a strict or crabbed one—which is what courts are supposed to provide anyway.' " *Vroegh v. Iowa Dep't of Corr.*, 972 N.W.2d 686, 702 (Iowa 2022) (quoting Antonin Scalia & Bryan A. Garner, *Reading Law: The Interpretation of Legal Texts* 233 (2012) [hereinafter Scalia & Garner]). A word or phrase is ambiguous only if "two or more quite different but almost equally plausible interpretations" might apply. Scalia & Garner at 31–32, 425; *see State v. Mathias*, 936 N.W.2d 222, 227 (Iowa 2019). Declaring ambiguity

whenever skilled lawyers offer divergent meanings for phrases would unnecessarily launch us into ambiguity-resolving canons in most of our cases. The majority today correctly finds there is only one plausible meaning of the phrase "in connection with" in the context of section 322.3(12).

Carreras's structuring conviction was "in connection with" the sale of motor vehicles because sufficient evidence showed that the money that was unlawfully split into multiple deposits was deposited into the business accounts of Carreras's dealership, Los Primos Auto Sales. I thus concur in part III.A of the court's opinion, and join fully the court's opinion in part III.B.

## II.

But I must respectfully dissent from part III.C of the court's opinion and would instead affirm the court of appeals' holding that the period of revocation was not tolled while the parties litigated this challenge.

The majority concludes that because Carreras requested and was granted a stay to prevent his license from being revoked while he pursued his appeal, we must disregard the plain language of Iowa Code section 322.3(12) that says the revocation period runs "for a period of five years *from the date of conviction.*" (Emphasis added.) I interpret the italicized language to mean what it says: that the revocation period begins on the date the person is convicted of the offense.

The statute on this point contains no scrivener's error or ambiguity. I find nothing unclear about the statutory language—and, apparently, neither does the majority. The majority instead reframes the issue as the "legal effect of the stay" that the district court entered under our judicial review statute, Iowa Code

section 17A.19. But what the court calls a *stay* is really *tolling*. The majority proceeds to "fix" the absence of any tolling provision by reading one in—as part-and-parcel of a stay—contrary to the plain words of the text.

The majority declares that section 322.3(12) means that a person who has been convicted of an offense in connection with selling motor vehicles shall have their license revoked for five years from the date of conviction *minus* any time the district court stayed enforcement of the revocation. But again, that's not what the legislature wrote in the statute: The legislature included a specific start date—"the date of conviction"—without providing for any tolling of that period. *Id.* § 322.3(12). Canons of statutory interpretation require that every word and every provision in a statute is to be given effect, if possible, and not deemed mere surplusage. *Bribriesco-Ledger v. Klipsch*, 957 N.W.2d 646, 650–51 (Iowa 2021). And at the same time, we aren't permitted to read words into a statute when the legislature chose not to include them. As Justice Brandeis put the point: "To supply omissions transcends the judicial function." *Iselin v. United States*, 270 U.S. 245, 251 (1926).

A *stay* is a "postponement or halting of a proceeding, judgment, or the like." *Stay*, *Black's Law Dictionary* (11th ed. 2019). In this case, the stay issued under section 17A.19 stopped the DOT from revoking Carreras's license during his appeal. But to *toll* in this context means "to stop the running of; to abate." *Toll*, *Black's Law Dictionary* (11th ed. 2019). Tolling stops a clock during a particular period; staying, by contrast, stops an action to enforce some claimed right. When the majority states that "the revocation period *was stopped* pending

Carreras's challenge to the revocation order through administrative and judicial stays," the majority commandeers a power to toll when the statutes at issue express no such power. (Emphasis added.)

The majority relies heavily on language in *Hanna v. State Liquor Control Commission*, 179 N.W.2d 374, 376 (Iowa 1970). But that case involved a court staying its own order—not a statute that set forth a legislatively determined start date—and thus doesn't address the question this case poses. In *Hanna*, the Liquor Control Commission entered a court order suspending Hanna's liquor license "for a period of six months ending August 1, 1968." *Id.* at 375. The district court then stayed the Commission's suspension pending Hanna's application for a writ of certiorari. *Id.* After the Commission's "August 1, 1968" date passed, Hanna argued that the matter was moot. *Id.* We rejected Hanna's argument. *Id.* at 376. Hanna's period of revocation was not based on a start date established by *statute* but the Commission's calculated end date in it's earlier *order. See id.* at 375. In this case, even the majority agrees that Carreras's period of revocation had already started running under the statute before the DOT initiated its revocation proceedings.

More analogous cases have addressed similar questions about whether, for instance, a stay in bankruptcy (to stop collection efforts) triggered by 11 U.S.C. section 362 tolls the running of the statutory redemption period to buy back a property after a mortgage foreclosure. Many courts have held that a bankruptcy *stay* does not *toll* the redemption period. *See Johnson v. First Nat'l*

*Bank of Montevideo,* 719 F.2d 270, 276–77 (8th Cir. 1983) (collecting cases). One court explained its reasoning for treating the two concepts differently in this way:

> The simple word "stay" is not appropriate to accomplish what is in fact a suspension or tolling of time. Those apt terms "suspension", or "tolling" were certainly available to the drafters of the Bankruptcy Code as they were to the drafters of the Bankruptcy Act and the Bankruptcy Rules, and it is instructive that they were not employed in Section 362(a).

*Ecklund & Swedlund Dev. Corp. v. Hennepin Fed. Sav. & Loan Ass'n of Minneapolis* (*In re Ecklund & Swedlund Dev. Corp.*), 17 B.R. 451, 455 (Bankr. D. Minn. 1981).

The same must be said of sections 17A.19 and 322.3(12). The legislature knows how to provide a tolling remedy when it wants to. Iowa Code section 901.5A(4), which addresses a court's ability to reopen a criminal sentence, explicitly differentiates between *staying* proceedings and *tolling* time, stating: "The filing of a motion or the reopening of a sentence under this section shall not constitute grounds to stay any other court proceedings, or to toll or restart the time for filing of any post-trial motion or any appeal." Of course, we presume words and phrases to bear the same meaning throughout a text. *State v. Richardson,* 890 N.W.2d 609, 619 (Iowa 2017); Scalia & Garner at 170. A statute's material variation in terms—distinguishing in the same sentence between *stay* and *toll*—suggests that they refer to different things. *Bribriesco-Ledger,* 957 N.W.2d at 650.

And as to regulatory sanctions even more specifically, "[t]he legislature knows how to delay collateral consequences of a conviction pending an appeal." *Maxwell v. Iowa Dep't of Pub. Safety,* 903 N.W.2d 179, 184 (Iowa 2017). For

instance, in Iowa Code section 692A.103(2), the legislature provides that "[a] sex offender is not required to register while incarcerated" but "the running of the period of registration is tolled . . . if a sex offender is incarcerated." Section 17A.19 speaks only of the power to stay, not the power to toll. "The principle that a matter not covered is not covered is so obvious that it seems absurd to recite it." Scalia & Garner at 93.

The statute at issue in this case pertains both to *current* owners or employees and also to potential *future* owners or employees, and thus applies not only when revoking a license but also when granting a license for a prospective licensee. As the court of appeals noted, it's reasonable to believe that the legislature may have accounted for the time necessary to complete the notice and hearing requirements when it included the "five years from the date of conviction" language in section 322.3(12). We should resist the temptation to use an interpretive tool to rewrite the text of a statute to comport with what the members of this court find to be a more reasonable policy result when our judicial role requires that we simply give the text its straightforward application. "Our task," after all, "is to interpret the statute, not improve it." *Brakke v. Iowa Dep't of Nat. Res.*, 897 N.W.2d 522, 541 (Iowa 2017).

We are properly bound by the legislature's explicit policy decision as revealed in the unambiguous text of section 322.3(12). Under the plain language of that statute, Carreras's revocation should run from "the date of conviction," and I thus respectfully dissent from the majority's contrary interpretation.